## DERDERIAN v GENESYS HEALTH CARE SYSTEMS

Docket Nos. 245339, 248908. Submitted June 15, 2004, at Detroit.
Decided August 24, 2004, at 9:00 A.M. Leave to appeal sought.

Dr. Gregory Derderian, Dr. William Liekweg, and a professional
corporation in which they practiced, Cardiovascular & Thoracic
Surgeons, P.C., brought an action in the Genesee Circuit Court
against Genesys Health Care Systems; Genesys P.H.O., L.L.C.; and
Genesys Regional Medical Center, seeking damages for an alleged
breach by Genesys of a contract that purported to guarantee the
doctors the exclusive right to perform certain types of surgery in
the Genesys system, in exchange for the doctors' agreement to
forgo the same surgical practice in any other hospital. In the
second amended complaint, the plaintiffs claimed (1) fraudulent
misrepresentation and conduct, (2) innocent misrepresentation,
(3) breach of contract, (4) promissory estoppel, (5) tortious inter-
ference with a contract, (6) false light invasion of privacy, and (7)
retaliation in violation of public policy by Genesys in response to
plaintiffs having filed suit to protest alleged Medicaid billing
violations by Genesys. In granting the defendants' summary
disposition motions, the court, Judith A. Fullerton, J., ruled that
the circuit court lacked subject-matter jurisdiction over counts one
through five and, alternatively, that the plaintiffs had not pre-
sented evidence demonstrating a genuine issue of material fact
regarding any of these claims. The court ruled for the defendants
regarding count six on the grounds that the statutory period of
limitations had expired and that the plaintiffs had failed to
establish a genuine issue of material fact regarding the claim of
false light invasion of privacy. The court ruled for the defendants
regarding count seven on the basis that the plaintiffs had not
asserted a Whistleblowers' Protection Act claim in the second
amended complaint. The court denied the defendants' motion for
an award of costs, including attorney fees, pursuant to MCR 2.405
(offer of judgment), concluding that the interest of justice excep-
tion to the offer of judgment sanctions, MCR 2.405(D)(3), applied
under the facts of this case. The plaintiffs appealed all the
decisions of the trial court except the disposition of their breach of

contract claim and the denial of sanctions for the defendants, the defendants appealed the denial of sanctions, and the appeals were consolidated.

The Court of Appeals *held*:

1. Staffing decisions of private hospitals are generally not subject to judicial review. While a court may decline to review such decisions pursuant to the judicial nonintervention doctrine, nevertheless, the court retains subject-matter jurisdiction over such claims. In the present case, because the trial court had subject-matter jurisdiction over the issues in this case, it also had the authority to grant sanctions related to the offer of judgment.

2. A claim of fraudulent misrepresentation requires proof that the defendant made a material representation, the representation was false, the representation was recklessly made or known to be false, the representation was made with the intent that the plaintiff would act on it, the plaintiff did act on it, and the plaintiff suffered damage. In this case, the alleged promise was of future conduct, not of conduct of the actor at or near the time of making the representations. Thus, the plaintiffs did not present evidence creating a genuine issue of material fact that at the time the defendants made promises, defendants did not intend to fulfill the promises. The alternative claim of innocent misrepresentation requires proof of a false statement of fact, made without knowledge of its falsity or intent to deceive, and relied on by the other party to the contract to the detriment of that party and to the gain of the party that made the false statement. The misrepresentation must relate to a past or existing fact and not be promissory in nature. Summary disposition of the plaintiffs' claim of innocent misrepresentation was appropriate because their claim relies on promises of future conduct.

3. A claim of tortious interference with a contract requires a contract, a breach, and an unjustified instigation of the breach by a nonparty to the contract. Because plaintiffs' claim for tortious interference is brought against another party to the contract, plaintiffs' cause of action cannot be maintained.

4. The trial court correctly determined that, because the plaintiffs attempted to incorporate by reference a Whistleblowers' Protection Act claim from an earlier complaint, the claim was not preserved in the final complaint. MCR 2.113(G) requires that statements in a pleading may be adopted by reference only in another part of the same pleading, not in a different pleading. Because *Grzesick v Cepela*, 237 Mich App 554 (1999), did not consider MCR 2.113(G) when considering the question of incorporation by reference, that case is not binding on this panel.

5. The applicable period of limitations for plaintiffs' claim of false light invasion of privacy is three years for a general injury to a person, MCL 600.5805(10), not one year for defamation, MCL 600.5805(9). Thus, the trial court erred by determining that because plaintiffs' claim was filed later than one year from the alleged occurrence, it was barred by MCL 600.5805(9). Nevertheless, summary disposition in favor of defendants was appropriate on the basis that plaintiffs failed to present evidence creating a genuine issue of material fact that Genesys published the allegedly damaging reports to the public in general or to a large number of people.

6. The trial court abused its discretion by denying the defendants' motion for costs and attorney fees. Invoking the interest of justice exception to the offer of judgment sanctions, MCR 2.405(D)(3), was error because the interest of judgment exception is to be used only in an unusual circumstance. In this case, the fact that the defendants might have moved for summary disposition earlier in the proceedings is not an unusual circumstance.

Affirmed in part, reversed in part, and remanded to the circuit court.

1. COURTS — SUBJECT-MATTER JURISDICTION — JUDICIAL NONINTERVENTION DOCTRINE — PRIVATE HOSPITAL STAFFING DECISIONS.

The judicial nonintervention doctrine provides that staffing decisions of private hospitals are generally not subject to judicial review, but does not eliminate a circuit court's subject-matter jurisdiction over such cases.

2. CONTRACTS — TORTIOUS INTERFERENCE — PARTIES.

A claim of tortious interference with a contract requires a contract, a breach, and an unjustified instigation of the breach by a nonparty to the contract; a party to a contract cannot maintain a cause of action for tortious interference against another party to the contract.

3. PRETRIAL PROCEDURE — OFFER OF JUDGMENT — SANCTIONS — INTEREST OF JUSTICE EXCEPTION.

The interest of justice exception to the offer of judgment sanctions of costs and attorney fees is to be used only in an unusual circumstance; that a party could have moved earlier for summary disposition is not an unusual circumstance (MCR 2.403[D][3]).

*Tom R. Pabst, P.C.* (by *Tom R. Pabst* and *Michael A. Kowalko*), for the plaintiffs.

*Keller Thoma* (by *Terrence J. Miglio, Frederic E. Champnella, II, Jonathon A. Rabin,* and *Kristin R. Binkley*) for the defendants.

Before: MARKEY, P.J., and WILDER and METER, JJ.

WILDER, J. These consolidated cases arise out of a business relationship between plaintiffs, two physicians and their professional corporation, and defendants, recently formed affiliated health care corporations in Grand Blanc. In Docket No. 245339, plaintiffs appeal by right the trial court's orders granting defendants' motions for summary disposition and dismissing plaintiffs' second amended complaint. In Docket No. 248908, defendants appeal by right the trial court's order denying their request for offer of judgment sanctions. We affirm the trial court's decision in Docket No. 245339, reverse the trial court's decision in Docket No. 248908, and remand for further proceedings.

I

In March 1999, plaintiff Dr. Gregory Derderian filed a complaint against defendant Genesys Health Care Systems (GHCS), alleging that GHCS contacted him in 1995 regarding the development of a cardiothoracic and vascular surgery specialty practice group to be located at Genesys Regional Medical Centers (the hospital) in Grand Blanc. Dr. Derderian asserted in count one, breach of contract, that he engaged in contract negotiations with GHCS to establish the practice group and that GHCS promised that the resulting contract would guarantee him at least $500,000 a year in earnings and an exclusive contract for certain referrals and surgeries between Dr. Derderian's practice group and the hospital. Additionally, he alleged that GHCS promised that he

would be provided the exclusive authority to recruit surgeons to the practice group and that GHCS required that his practice group work exclusively for the hospital and enter into a contract to provide emergency room services as a prerequisite to becoming the only cardiovascular surgeons at the hospital. Upon his oral agreement to these terms, Dr. Derderian alleged, a contract formed.

Dr. Derderian further alleged that he acted in reliance on GHCS's promises by terminating his practice at other area hospitals, including McLaren Hospital and Hurley Hospital, beginning to work for GHCS, engaging in the emergency room contract, and complying with GHCS's policies. Although the complaint does not specifically address any instance of breach of contract, Dr. Derderian alleged that he incurred a loss of income and loss of enjoyment of his previously vigorous practice.

In count two, "Interference with Advantageous Business Relationship," Dr. Derderian alleged that GHCS breached its duty not to interfere with Dr. Derderian's business relationships by (1) failing to fulfill its promises, (2) leading Dr. Derderian to believe that he would receive more personal satisfaction from a business relationship with GHCS than his previous relationships while knowing that the relationship with GHCS would not come to fruition, and (3) engaging in discussions with other practice groups to compete with or replace Dr. Derderian's practice group. Concurrent with filing his complaint, Dr. Derderian requested a temporary restraining order to prevent GHCS from hiring an additional cardiovascular surgeon. GHCS opposed, and the trial court ultimately denied, this request.

With leave of the trial court, Dr. Derderian filed an amended complaint in November 1999, in which he

realleged his claims of breach of contract and tortious interference and added a third claim, "Violation of the Whistleblower[s'] Protection Act and Public Policy." In support of this claim, Dr. Derderian alleged that he is employed by GHCS by virtue of his privilege and referral relationship and emergency room contract with GHCS and that after he advised GHCS personnel of possible incidents of Medicare fraud occurring at the facility, his medical privileges were suspended in September 1999.

The trial court again granted Dr. Derderian leave to amend his complaint in August 2000. The second amended complaint added plaintiffs Dr. William Liekweg and Cardiovascular & Thoracic Surgeons, P.C.,[1] and defendants Genesys P.H.O., L.L.C., and the hospital. The new plaintiffs joined in Dr. Derderian's allegations concerning the factual underpinnings of the business relationship, including the terms of the alleged contract the parties formed. Plaintiffs more specifically alleged that defendants' corporate officers, including Michael Deming, Kathy Lawson, Michael James, and Young Suh, were involved in forming the practice groups for the new health care campus in the 1990s and that defendants' high-ranking officials had confirmed in writing the terms of the contractual relationship.

Count one of the second amended complaint alleged "Fraudulent Misrepresentation & Conduct," and stated, among other things, that defendants allegedly made false representations concerning plaintiffs' potential business relationship with them, upon which plaintiffs detrimentally relied. In count two, plaintiffs alleged a claim of innocent misrepresentation based on defendants' precontract representations. Counts three

---

[1] Cardiovascular & Thoracic Surgeons, P.C., is the professional corporation operated by Dr. Derderian, Dr. Liekweg, and a third doctor, Dr. Ali Esfahani.

and four alleged breach of contract and promissory estoppel, respectively, on the basis of defendants' breach of the agreement. In count five, plaintiffs alleged that defendants intentionally interfered with plaintiffs' contractual relations and prospective economic advantage regarding plaintiffs' relationships with patients, other doctors, and "certain" defendants. Plaintiffs alleged in count six that defendants invaded their privacy by placing them in a "false light" by virtue of their conduct and false statements. In count seven, plaintiffs alleged that defendants violated public policy by retaliating against plaintiffs for filing suit against them and protesting Medicaid billing violations. Plaintiffs did not expressly reallege their claim under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*

Over two years later, following substantial discovery, defendants filed three motions for summary disposition. In their motion for summary disposition of counts one through five of the second amended complaint, defendants requested dismissal of plaintiffs' claims of fraudulent misrepresentation and innocent misrepresentation (counts one and two) on the basis of MCR 2.116(C)(8) and dismissal of plaintiffs' claims of breach of contract, promissory estoppel, and tortious interference (counts three, four, and five, respectively) on the basis of MCR 2.116(C)(10).

In their "Motion for Summary Disposition Regarding Subject Matter Jurisdiction, Failure to Exhaust Administrative Remedies & Health Care Quality Improvement Act Immunity," defendants asserted that the trial court lacked subject-matter jurisdiction to consider counts one through five and count seven (violation of public policy) of plaintiffs' second amended complaint because plaintiffs based these claims on challenges to a private hospital's staffing decisions, which are not sub-

ject to judicial review.[2] Defendants also argued that, following his suspension, Dr. Derderian failed to exhaust his internal administrative remedies and that his claims were barred by the immunity granted pursuant to the Health Care Quality Improvement Act, 42 USC 11101 *et seq.*

In their third motion for summary disposition, regarding counts six (invasion of privacy) and seven of the second amended complaint, defendants requested summary disposition of (1) any claims stated in count six on behalf of Dr. Liekweg and the professional corporation because the allegations in the second amended complaint pertained only to Dr. Derderian; (2) Dr. Derderian's claim in count six on the basis of MCR 2.116(C)(10); and (3) plaintiffs' public policy violation claim because, among other deficiencies, plaintiffs were not at-will employees and, therefore, could not allege such a claim.

Plaintiffs opposed defendants' motions.[3] After hearing oral arguments, the trial court stated on the record that, as argued by defendants, it lacked subject-matter jurisdiction over counts one through five and count seven of the second amended complaint because the judicial nonintervention doctrine precluded review of these claims. The trial court also addressed some of

---

[2] Throughout this opinion, we will refer to this principle as the judicial nonintervention doctrine.

[3] While count six of the second amended complaint contained only general allegations that defendants had invaded plaintiffs' privacy, plaintiffs' response to defendants' motion for summary disposition regarding counts six and seven asserted more specifically that defendants had invaded their privacy by publishing inaccurate quality evaluation reports from outside agencies (TSI and Medqual), by permitting their employees to refer to Dr. Derderian as "Dr. Death," by blaming Dr. Derderian for negative results of medical care rendered to certain patients, and by making false statements to the Medical Executive Team.

defendants' alternate grounds for dismissal of these counts of the second amended complaint and concluded that plaintiffs had not presented evidence demonstrating a genuine issue of material fact regarding any of these claims. The trial court ruled in the alternative that summary disposition also should be granted to defendants on count six, plaintiffs' invasion of privacy claim, because the statute of limitations precluded plaintiffs' invasion of privacy claims arising out of the publication of quality evaluation reports from TSI and Medqual, and because plaintiffs failed to establish a genuine issue of material fact on their claims arising from the quality evaluation reports or their claims that they were cast in a false light by defendants. The trial court also concluded that plaintiffs had not revived their Whistleblower's Protection Act claim in the second amended complaint.

The trial court signed orders granting each of defendants' three motions. Its order granting defendants' "Motion for Summary Disposition Regarding Subject Matter Jurisdiction, Failure to Exhaust Administrative Remedies & Health Care Quality Improvement Act Immunity" dismissed plaintiffs' suit in its entirety, despite the fact that defendants' argument regarding subject-matter jurisdiction, the only basis for summary disposition asserted in that motion that the trial court addressed, did not pertain to count six of the second amended complaint. The trial court's orders granting the other two motions indicated that the motions were granted for the reasons stated on the record, and dismissed the respective counts with prejudice.

Plaintiffs moved for reconsideration, which the trial court denied. Defendants then moved for costs and attorney fees pursuant to MCR 2.405, the offer of judgment rule, in light of plaintiffs' rejection of defen-

dants' October 2000 counter-offer of judgment. Defendants' motion requested a ruling solely on defendants' entitlement to costs and attorney fees, reserving for a later date the determination of a reasonable fee and costs to be awarded. The trial court granted defendants' motion, and defendants subsequently submitted their bill of costs with a motion for entry of an order awarding costs and attorney fees. Plaintiffs contended in response that because the trial court held that it lacked jurisdiction over the subject matter of plaintiffs' claims, it also lacked subject-matter jurisdiction over defendants' request for costs and fees. In ruling on defendants' motion, the trial court stated:

> All right, the Court is going to deny the motion for two reasons. I'm gonna [sic] deny it on the *Fox* [*v Univ of Michigan Bd of Regents*, 375 Mich 238, 242; 134 NW2d 146 (1965)] case, no jurisdiction, although I have a feeling maybe the *WPW Acquisition* [*Co v City of Troy*, 254 Mich App 6, 9; 656 NW2d 881 (2002)] case would allow it.
>
> And I'm going to deny it under [MCR] 2.405(D)(3) in the interest of justice, because I do think that at least a substantial part of the case, this is the mitigation issue, could have been eliminated way back that would [have] made it much easier on everybody if that motion [for summary disposition] had been brought sooner.
>
> So, balancing all the factors, the Court is gonna [sic] decline to grant the motion. . . .

Defendants filed a motion for reconsideration of the trial court's decision, which the trial court denied.

Plaintiffs now appeal the trial court's grant of defendants' motions for summary disposition, but do not appeal the trial court's ruling on count three of the second amended complaint, breach of contract. Defendants appeal the trial court's denial of their motion for costs and attorney fees pursuant to MCR 2.405.

II

This Court reviews de novo a trial court's decision concerning a motion for summary disposition. *Colista v Thomas*, 241 Mich App 529, 534-535; 616 NW2d 249 (2000). When reviewing a motion filed pursuant to MCR 2.116(C)(10), "we consider 'the substantively admissible evidence actually proffered in opposition to the motion.' . . . Thus, when such a motion is properly brought, the nonmovant must, under MCR 2.116(G)(3)(b) and 2.116(G)(4), produce admissible support for its opposition in order to defeat the motion." *Adair v Michigan*, 470 Mich 105, 120; 680 NW2d 386 (2004).

We also review de novo the questions of law involved in construing court rules and statutes, *Colista, supra* at 535, in determining a court's subject-matter jurisdiction, *Alliance for Mentally Ill of Michigan v Dep't of Community Health*, 231 Mich App 647, 659; 588 NW2d 133 (1998), and in determining the trial court's authority to assess a particular sanction, *Persichini v William Beaumont Hosp*, 238 Mich App 626, 637; 607 NW2d 100 (1999). We review the trial court's decision that the "interest of justice" exception to MCR 2.405(D)(3) applies to the facts of a specific case for an abuse of discretion. *Stitt v Holland Abundant Life Fellowship (On Remand)*, 243 Mich App 461, 472, 476-477; 624 NW2d 427 (2000).

III

A. DOCKET NO. 245339

Rather than addressing plaintiffs' claim that the trial court erroneously applied the judicial nonintervention doctrine to the second amended complaint, we choose to resolve this case on certain alternate grounds relied on

by the trial court and challenged on appeal by plaintiffs. As an initial matter, however, because the trial court dismissed plaintiffs' claims on the basis of a lack of subject-matter jurisdiction and because a court that lacks subject-matter jurisdiction cannot adjudicate the parties' claims, *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992); *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992), citing *Fox, supra* at 242, we must first address whether application of the judicial nonintervention doctrine in fact deprives the trial court of subject-matter jurisdiction. We conclude that this doctrine does not affect the court's subject-matter jurisdiction.

In part, we reach this conclusion by examining the meaning and boundaries of subject-matter jurisdiction. Jurisdiction over the subject matter of a case

> is the power of a court to act and the authority of a court to hear and determine a case. As its name implies, subject-matter jurisdiction describes the types of cases and claims that a court has authority to address. In other words:
>
> "Jurisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial." [*In re AMB*, 248 Mich App 144, 166-167; 640 NW2d 262 (2001) (citations and quotation marks omitted).]

The circuit court possesses "broad original jurisdiction over all matters, particularly civil, so long as jurisdiction is not expressly prohibited by law." *Campbell v St John Hosp*, 434 Mich 608, 613; 455 NW2d 695 (1990). "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where

exclusive [jurisdiction is given to another court] or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. Application of these principles persuades us that the judicial nonintervention doctrine does not present a limitation on the court's subject-matter jurisdiction. Circuit courts, in the abstract, have jurisdiction over the types of claims stated in plaintiffs' second amended complaint, and neither Michigan's Constitution nor statutory law prohibits the review of the staffing decisions of private hospitals.[4]

We also find support for our conclusion in the judicial nonintervention doctrine itself. The earliest Michigan cases discussing the doctrine do not characterize it as one depriving the court of subject-matter jurisdiction. Rather, these cases merely state that the staffing decisions of private hospitals are not subject to judicial review. *Hoffman v Garden City Hosp-Osteopathic,* 115 Mich App 773, 778-779; 321 NW2d 810 (1982); *Regualos v Community Hosp,* 140 Mich App 455, 461; 364 NW2d 723 (1985). This doctrine does not arise from a limitation on the court's authority, but, in part, from the distinction between public and private hospitals. In *Hoffman,* for example, the Court acknowledged that precedent required public hospitals to afford due process to physicians, *Milford v People's Community Hosp*

---

[4] Notably, courts with subject-matter jurisdiction do not always exercise it. The doctrine of forum non conveniens, for example, permits a court with full authority to hear a case to decline to do so in certain circumstances. See *Miller v Allied Signal, Inc,* 235 Mich App 710, 713; 599 NW2d 110 (1999). Additionally, federal courts, "in the interest of comity and federalism," sometimes abstain from exercising their jurisdiction in favor of state court resolution of certain issues. See *Quackenbush v Allstate Ins Co,* 517 US 706, 716; 116 S Ct 1712; 135 L Ed 2d 1 (1996), citing, e.g., *Younger v Harris,* 401 US 37; 91 S Ct 746; 27 L Ed 2d 669 (1971), *Railroad Comm of Texas v Pullman Co,* 312 US 496; 61 S Ct 643; 85 L Ed 971 (1941).

*Auth,* 380 Mich 49; 155 NW2d 835 (1968); *Touchton v River Dist Community Hosp,* 76 Mich App 251; 256 NW2d 455 (1977), but recognized and chose to follow the majority position that private hospitals, on the other hand, have "the power to appoint and remove [staff] members at will without judicial intervention." *Hoffman, supra* at 778. Since *Hoffman,* this Court has refrained from reviewing numerous claims, framed in various ways, that implicate the hospital's decision and the basis for its decision, see, e.g., *Sarin v Samaritan Health Ctr,* 176 Mich App 790, 794; 440 NW2d 80 (1989); *Veldhuis v Central Michigan Community Hosp,* 142 Mich App 243, 247; 369 NW2d 478 (1985), while "declin[ing] to articulate a broad principle that a private hospital's staffing decisions may *never* be judicially reviewed," *Long v Chelsea Community Hosp,* 219 Mich App 578, 586; 557 NW2d 157 (1996) (emphasis in original). Accordingly, because this doctrine, at its core, is not a limitation on the court's authority, we conclude that its application does not deprive the court of subject-matter jurisdiction.[5]

Having reached this conclusion, we may address the trial court's decision that plaintiffs' claims fail as a matter of law.

### 1. FRAUD[6]

Plaintiffs first assert that the trial court erred by concluding that they did not demonstrate a genuine

---

[5] Although at least two cases applying the doctrine, *Veldhuis, supra,* and *Bhogaonker v Metro Hosp,* 164 Mich App 563, 566; 417 NW2d 501 (1987), affirmed dismissal on the basis of a lack of subject-matter jurisdiction, neither case squarely addressed whether that characterization was accurate.

[6] On appeal, plaintiffs reference claims of "fraud," but do not distinguish between the claims of "fraudulent misrepresentation and conduct" and "innocent misrepresentation" pleaded in the second amended complaint. Although it is unclear whether plaintiffs intended to discuss both claims, we discuss each claim separately.

issue of material fact on their claims of fraud, given that the record reflects that defendants did not intend to keep their promises to plaintiffs.[7] We disagree.

We first conclude that plaintiffs did not present a genuine issue of material fact on their claim of fraudulent misrepresentation.

> To establish a prima facie claim of fraudulent misrepresentation, a plaintiff must prove (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth or falsity, and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damage. *M&D, Inc v McConkey,* 231 Mich App 22, 27; 585 NW2d 33 (1998). [*Campbell v Sullins,* 257 Mich App 179, 195; 667 NW2d 887 (2003).]

Generally, a claim of fraud cannot be based on a promise of future conduct. *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976); *Eerdmans v Maki,* 226 Mich App 360, 366; 573 NW2d 329 (1997). An exception to this rule exists, however, if a promise is made in bad faith without the intention to perform it.[8]

---

[7] Although defendants requested summary disposition of these claims pursuant to MCR 2.116(C)(8), the parties cited, and the trial court relied on, evidence outside the pleadings in support of dismissal of these claims. Thus, the trial court's decision was based on MCR 2.116(C)(10), *Driver v Hanley (After Remand),* 226 Mich App 558, 562; 575 NW2d 31 (1997), and we will review it under the correct subrule, *Stoudemire v Stoudemire,* 248 Mich App 325, 332 n 2; 639 NW2d 274 (2002).

[8] But see *State Bank of Standish v Curry,* 190 Mich App 616, 622-623; 476 NW2d 635 (1991), rev'd in part on other grounds 442 Mich 76; 500 NW2d 104 (1993), in which the promisees alleged that the promisor "knew or should have known that it did not intend to keep its promise," and this Court affirmed dismissal stating that "[e]ven assuming that the bank knowingly made a false representation, the representation related

*Hi-Way Motor, supra* at 337-338. "[E]vidence of fraudulent intent, to come within the exception, must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.' " *Id.* at 338-339, quoting *Danto v Charles C Robbins, Inc,* 250 Mich 419, 425; 230 NW 188 (1930). Plaintiffs, therefore, must demonstrate that at the time defendants made promises to them, defendants did not intend to fulfill the promises. See *Foodland Distributors v Al-Naimi,* 220 Mich App 453, 490; 559 NW2d 379 (1996) (O'CONNELL, J., dissenting), citing Pappas & Steiger, Michigan Business Torts (ICLE, 1991), § 6.7, p 84.

Plaintiffs assert that the record supports an inference that defendants did not intend to fulfill the promised terms of the agreement with plaintiffs, particularly the provision that granted plaintiffs exclusive authority to recruit an additional surgeon. Plaintiffs rely on testimony that Young Suh, the Chief Executive Officer of Genesys Health Services, Inc., and Chairman of the Board of the PHO, was secretly recruiting a cardiologist in 1997 and thereby broke his promise to give plaintiffs sole authority to recruit an additional surgeon. However, evidence of a broken promise is not evidence of fraud. *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438, 444; 505 NW2d 275 (1993). This evidence does not show that, at the time the promise was made, Suh did not intend to fulfill it.

Plaintiffs also argue that defendants "set up" plaintiffs to be deemed incompetent, justifying defendants' eventual denial of exclusivity, by publishing inaccurate reports by review organizations, TSI and Medqual, that criticized the quality of plaintiffs' work. Regardless of whether these reports were accurate, plaintiffs present

---

to future conduct." This Court, however, did not specifically address the applicability of the bad-faith exception to the promisor's conduct.

no evidence that defendants intentionally skewed the results or that they used these reports to rationalize their subsequent conduct. Evidence concerning the falsity of these reports does not indicate that defendants made promises that they did not intend to keep.

Plaintiffs next assert that Kathleen Lawson, a vice-president of Genesys Healthcare Systems during the relevant period, manipulated the call schedule in the heart catheterization lab to make plaintiffs appear incompetent. The portion of the record that plaintiffs cite to support this statement does not mention Lawson. Additionally, even if Lawson engaged in this conduct, plaintiffs have not shown that when she made promises to plaintiffs, she did not intend to keep them.

Lastly, plaintiffs assert that Young Suh admitted that he never believed that plaintiffs could handle the volume of surgeries that they had been promised would be theirs to perform exclusively. Plaintiffs misrepresent Suh's testimony. Suh actually testified that he doubted that the promise of exclusivity had been made because the three doctors involved, Drs. Derderian, Liekweg, and Esfahani (the third physician practicing in plaintiffs' professional corporation), had historically been unable to attract more than three hundred surgeries a year, which was Suh's minimum goal for Genesys. This explanation of Suh's belief that plaintiffs were never promised an exclusive relationship with the hospital does not establish a genuine issue of material fact that Suh did not intend to fulfill promises that Kathleen Lawson and Michael Deming made.

Plaintiffs' claim of innocent misrepresentation also fails. "[A] false statement of fact, made without knowledge of its falsity or intent to deceive, is actionable [under Michigan's doctrine of innocent misrepresentation] if relied upon by the other party to the contract to

their detriment and the party that made the false statement is unjustly enriched." *Alibri v Detroit/Wayne Co Stadium Auth*, 254 Mich App 545, 563-564; 658 NW2d 167 (2002). "[T]he misrepresentation must relate to a past or existing fact and not be promissory in nature." *Id.* at 564. The "bad faith" exception applicable to fraudulent misrepresentation does not apply to claims of innocent misrepresentation because innocent misrepresentation exists only where there is no intent to deceive. See *id.* Therefore, because plaintiffs' claims rely on promises of future conduct, summary disposition was appropriate.

### 2. PROMISSORY ESTOPPEL

Plaintiffs also contend that, because a jury could infer that defendants intended to enter into the promised business arrangement and that plaintiffs reasonably relied to their detriment on defendants' promises, the trial court erred by dismissing their claim of promissory estoppel. Plaintiffs fail, however, to discuss the trial court's significant conclusion that the promises were not sufficiently clear and definite. "[T]he sine qua non of the theory of promissory estoppel is that the promise be clear and definite . . . ." *State Bank of Standish v Curry*, 442 Mich 76, 84-85; 500 NW2d 104 (1993). When an appellant fails to dispute the basis of the trial court's ruling, "[t]his Court . . . need not even consider granting plaintiffs the relief they seek." *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997). Accordingly, we will not review plaintiffs' promissory estoppel claim.

### 3. TORTIOUS INTERFERENCE

Plaintiffs also argue that the trial court erred by dismissing their claim of tortious interference because

the record reflects that plaintiffs gave up their privileges at other institutions in reliance on a business expectancy with defendants and that defendants' promises to plaintiffs interfered with their contractual relationships with other institutions. We disagree.

The elements of tortious interference with a contract are: "(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Mahrle v Danke,* 216 Mich App 343, 350; 549 NW2d 56 (1996). "One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp,* 251 Mich App 125, 131; 649 NW2d 808 (2002). A plaintiff, who is party to a contract, cannot maintain a cause of action for tortious interference against another party to the contract. *Reed v Metro Mich Girl Scout Council,* 201 Mich App 10, 13; 506 NW2d 231 (1993).

In the present case, to the extent that plaintiffs' claim depends on allegations that defendants interfered with their own contract, plaintiffs' claim fails. *Reed, supra.* Relating to plaintiffs' remaining assertion that defendants interfered with plaintiffs' contracts with other hospitals or group practices, plaintiffs have failed to produce evidence of contracts with such entities. Therefore, the trial court properly dismissed this count of plaintiffs' second amended complaint. *Mahrle, supra.*

### 4. WHISTLEBLOWERS' PROTECTION ACT/PUBLIC POLICY VIOLATION

Plaintiffs assert that the trial court improperly concluded that plaintiffs did not reallege Dr. Derderian's WPA claim in the second amended complaint and that he

lacked standing under the WPA and the public-policy exception to the employment at will doctrine because he was not employed by defendants. We disagree.[9]

Although Dr. Derderian did not expressly restate his WPA claim in the second amended complaint, plaintiffs argue that they incorporated this claim by reference to the first amended complaint and by reliance on their previously filed jury demand. We disagree. Amended pleadings supercede prior pleadings. MCR 2.118(A)(4). Additionally, "[s]tatements in a pleading may be adopted by reference only in another part of the same pleading." MCR 2.113(G). As the authors of Michigan Court Rules Practice comment:

> MCR 2.113(G) provides that statements in a pleading may be adopted by reference only in another part of the same pleading. It thus differs from its predecessor, GCR 1963, 113.5, in two important respects. First, incorporation by reference used to be permitted in other pleadings and in motions, and that is no longer the case. Thus, for example, an amended complaint must restate all of the facts on which the pleader intends to rely. Second, incorporation by reference was formerly required when identical facts were relied upon in separate counts or defenses of the same pleading. Although that is still permitted under MCR 2.113, it is no longer required. [1 Dean & Longhofer, Michigan Court Rules Practice, § 2113.5, p 317-318.]

Our conclusion is not prohibited by *Grzesick v Cepela*, 237 Mich App 554, 562-563; 603 NW2d 809 (1999), in which this Court opined that "in order to be properly preserved, an affirmative defense must be expressly asserted, or *expressly incorporated from a former pleading*, in each successive amendment of the original

---

[9] Plaintiffs do not contest the trial court's decision as it pertains to the claims by Dr. Liekweg and the professional corporation; therefore, our analysis is limited to Dr. Derderian's allegations.

responsive pleading." (Emphasis added.) The *Grzesick* Court reached this conclusion despite its recognition that MCR 2.118(A)(4), by requiring compliance with MCR 2.113, requires amended pleadings to be complete unto themselves. *Grzesick, supra* at 562, citing Dean & Longhofer, *supra* at § 2118.7, p 557. Regardless, because the *Grzesick* Court did not address the content or construction of MCR 2.113(G), its statement regarding incorporation from prior pleadings is not binding on this Court. See *WA Foote Mem Hosp v City of Jackson*, 262 Mich App 333; 686 NW2d 9 (2004), citing *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 180; 615 NW2d 702 (2000), and *Topps-Toeller, Inc v City of Lansing*, 47 Mich App 720, 729; 209 NW2d 843 (1973); see also *Terra Energy, Ltd v Michigan*, 241 Mich App 393, 399; 616 NW2d 691 (2000). Accordingly, plaintiffs' attempt to incorporate Dr. Derderian's WPA claim into the second amended complaint by reference to the first amended complaint fails.

The trial court also properly dismissed Dr. Derderian's claim based on the public-policy exception to the employment at will doctrine. Assuming without deciding that Dr. Derderian was employed by defendants, we resolve this claim on an alternate basis not addressed by the trial court, but raised by plaintiffs in the trial court and on appeal. Plaintiffs contend that the temporal relationship between Dr. Derderian's letters protesting defendants' conduct and his suspension provides sufficient evidence that he was suspended because he objected to defendants' conduct. We disagree. "[A] temporal relationship, standing alone, does not demonstrate a causal connection between [a] protected activity and any adverse employment action. Something more ... is required to show causation ...." *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003), citing, e.g., *Taylor v Modern Engineering, Inc*, 252 Mich App

655, 662; 653 NW2d 625 (2002) (stating that a temporal relationship does not demonstrate causation in a case alleging retaliation for alleged whistleblower activity). Because Dr. Derderian's claim fails on this basis, it is unnecessary to discuss plaintiffs' other assertions regarding this claim.

5. INVASION OF PRIVACY

Plaintiffs contend that the trial court erroneously decided that the statute of limitations barred a portion of plaintiffs' claim of invasion of privacy and that plaintiffs did not provide evidence of a sufficient publication to raise a genuine issue of material fact on this claim. We agree in part.

> As this Court held in *Duran v Detroit News,* 200 Mich App 622, 631-632; 504 NW2d 715 (1993):
>
> > "In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." [*Porter v Royal Oak,* 214 Mich App 478, 486-487; 542 NW2d 905 (1995).]

This tort "is limited to situations where the plaintiff is given publicity." *Sawabini v Desenberg,* 143 Mich App 373, 381; 372 NW2d 559 (1985).

Plaintiffs base their false-light claim, in part, on publication of the results of the TSI and Medqual evaluation reports. The trial court concluded that these claims were time-barred. Because plaintiffs have not provided evidence indicating when the Medqual results were published, they have failed to refute the trial court's conclusion regarding that claim. Regarding the TSI report, however, Dr. Liekweg testified that the

allegedly inaccurate results of this report were published to the PHO "a few months" before his deposition in May 1999. Although defendants assert, without citation of supporting authority, that the statute of limitations for plaintiffs' claim is the one-year period applicable to the somewhat similar claim of defamation, MCL 600.5805(9), this Court has previously applied the general "injury to person" limitation period, three years, see MCL 600.5805(10), to this cause of action. *Arent v Hatch*, 133 Mich App 700, 705; 349 NW2d 536 (1984). Because the Legislature did not expressly impose a one-year limitations period on claims of false light invasion of privacy, we will not assume that it intended to do so. *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294 (2003), citing *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996).

Defendants ask this Court to disregard Dr. Liekweg's testimony because he said, "I just know *hearsay* that it was revealed to the PHO as part of the rational[e] for now going out and recruiting a new surgeon." (Emphasis added.) We do not construe Dr. Liekweg's statement as a legal conclusion that his testimony constitutes hearsay. Rather, viewing the evidence in plaintiffs' favor, it appears that Dr. Liekweg did not actually hear the broadcast of the TSI report, but somehow learned that the report had been disseminated. Dr. Liekweg's testimony demonstrates that the three-year statutory period of limitations had not expired on plaintiffs' claim arising from the TSI report when plaintiffs filed the second amended complaint.

Although plaintiffs' claim arising from the TSI report is not time-barred, we nevertheless conclude that plaintiffs have failed to demonstrate a genuine issue of

material fact that the TSI report was published " 'to the public in general, or to a large number of people.' " *Porter, supra* at 486, quoting *Duran, supra* at 631-632. Although plaintiffs assert that the results were published to the entire hospital, Dr. Liekweg testified only that the results were "revealed to the PHO." Plaintiffs present no evidence establishing how many people "the PHO" includes. Without any evidence to support this element of their claim, plaintiffs fail to present a genuine issue of material fact. *Adair, supra* at 120.

Plaintiffs also assert that defendants placed Dr. Derderian in a false light by (1) permitting their employees to refer to Dr. Derderian as "Dr. Death," (2) blaming him for adverse results in his treatment of certain patients, and (3) making false statements to the medical executive committee. We conclude that plaintiffs have not raised a genuine issue of material fact concerning these claims.

As evidence for the first of these claims, plaintiffs rely on deposition testimony and interrogatory answers from Dr. James Rogers, a surgeon employed by the hospital, in which he stated that "the nurses" referred to Dr. Derderian as Dr. Death and provided names of approximately twenty-five nurses, physicians, and other medical personnel he heard refer to Dr. Derderian as "Dr. Death." Dr. Rogers's testimony pertains to the number of publications made, but does not create a question of fact that the publications were made " 'to the public in general, or to a large number of people.' " *Porter, supra* at 486, *quoting Duran, supra* at 631-632. Even construing Dr. Rogers's list of medical personnel as the "public" to whom the information was broadcast, plaintiffs have not demonstrated a sufficient level of publicity: "Since [the evidence addresses] incidents which occurred only in the presence of other employ-

ees . . . , plaintiff failed to [demonstrate] that 'the oral communication [was] broadcast to the public in general or publicized to a large number of people.' " *Dzierwa v Michigan Oil Co*, 152 Mich App 281, 288; 393 NW2d 610 (1986), quoting *Reed v Ponton*, 15 Mich App 423, 426; 166 NW2d 629 (1968).

Plaintiffs also contend that defendants placed Dr. Derderian in a false light by blaming him for the negative results of the medical care he provided to four patients. In support of this claim, plaintiffs provide general citations from Dr. Derderian's deposition, testimony from the profusionist in one patient's case, and one patient's medical records. Such general citations are insufficient. "Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." MCR 7.212(C)(7). We will not search the record for factual support for plaintiffs' claims. *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998). Moreover, the cited medical records constitute hearsay, do not identify the patient, and contain no information supporting a claim that defendants cast Dr. Derderian in a false light.

Finally, plaintiffs assert that defendants placed Dr. Derderian in a false light by making false statements to the medical executive committee/team (MET). Again, plaintiffs fail to adequately support their claim. Plaintiffs provide general citations relating to seven depositions, but cite no specific testimony in support of their claim. See *Great Lakes Div, supra*; MCR 7.212(C)(7). Additionally, plaintiffs fail to provide evidence to support the requirement that any publication was made to a sufficiently large group of people.

On the basis of foregoing discussion, we affirm the trial court's dismissal of the second amended complaint.

## B. DOCKET NO. 248908

Defendants first assert that the trial court erred by denying their motion for offer of judgment sanctions pursuant to MCR 2.405(D)[10] on the basis that it lacked subject-matter jurisdiction over plaintiffs' claims. In light of our conclusion that the judicial nonintervention doctrine does not deprive the trial court of subject-matter jurisdiction, it is not necessary to address whether, in the absence of subject-matter jurisdiction over some of plaintiffs' claims, the trial court may award offer of judgment sanctions. Because the trial court did not lack subject-matter jurisdiction over plaintiffs' claims, it erred by denying sanctions on this basis.

---

[10] MCR 2.405(D) provides:

If an offer [of judgment] is rejected, costs are payable as follows:

(1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.

(2) If the adjusted verdict is more favorable to the offeree than the average offer, the offeror must pay to the offeree the offeree's actual costs incurred in the prosecution or defense of the action. However, an offeree who has not made a counteroffer may not recover actual costs unless the offer was made less than 42 days before trial.

(3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule.

(4) Evidence of an offer is admissible only in a proceeding to determine costs.

(5) Proceedings under this rule do not affect a contract or relationship between a party and his or her attorney.

A request for costs under this subrule must be filed and served within 28 days after the entry of the judgment or entry of an order denying a timely motion for a new trial or to set aside the judgment.

Defendants next contend that the trial court erred because the interest of justice exception applies only to an award of attorney fees and, in any event, does not apply under the circumstances of this case. We agree.

We first conclude that the trial court erred as a matter of law by extending the interest of justice exception to the portion of defendants' motion requesting actual costs. MCR 2.405(D)(3) provides that "[t]he court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule." MCR 2.405(A)(6) defines "actual costs" as "the costs and fees taxable in a civil action and a reasonable attorney fee for services necessitated by the failure to stipulate to the entry of judgment." By its plain language, MCR 2.405(D)(3) limits application of the interest of justice exception to the attorney fee portion of "actual costs." See *Luidens v 63rd Dist Court*, 219 Mich App 24, 30-31; 555 NW2d 709 (1996) (recognizing that the interest of justice exception to MCR 2.405[D][3] "does not authorize courts to refuse reimbursement of incurred costs, other than attorney fees . . ."); see also *Haliw v Sterling Hts*, 257 Mich App 689, 706; 669 NW2d 563 (2003) (noting that MCR 2.403[O][11], unlike MCR 2.405[D][3], permits a trial court to deny " 'actual costs,' which include both court costs and reasonable attorney fees").

We also conclude that the trial court abused its discretion by invoking the exception on the basis that defendants could have moved for summary disposition earlier in the proceedings.

"[A]bsent unusual circumstances," the "interest of justice" does not preclude an award of attorney fees under MCR 2.405. . . .

"The better position is that a grant of fees under MCR 2.405 should be the rule rather than the exception. To

conclude otherwise would be to expand the 'interest of justice' exception to the point where it would render the rule ineffective." [*Luidens, supra* at 32, quoting *Butzer v Camelot Hall Convalescent Centre, Inc (After Remand)*, 201 Mich App 275, 278-279; 505 NW2d 862 (1993).]

Factors such as the reasonableness of the offeree's refusal of the offer, the party's ability to pay, and the fact that the claim was not frivolous "are too common" to constitute the unusual circumstances encompassed by the "interest of justice" exception. *Luidens, supra* at 34-35. However, the exception may be applicable when an offer is made in the spirit of "gamesmanship . . . , rather than a sincere effort at negotiation," or when litigation of the case affects the public interest, such as a case resolving an issue of first impression. *Luidens, supra* at 35-36.

We conclude that the mere ability to seek summary disposition at an earlier point in the litigation does not constitute an "unusual circumstance," particularly when, as defendants maintain, discovery was necessary to determine the true nature of plaintiffs' claims and defendants' motions were procedurally proper at the time they were heard. Litigants frequently have valid reasons to refrain from filing summary disposition motions at the earliest opportunity, and the failure to do so, without other evidence, is an insufficient basis to merit the invoking of the interest of justice exception. See *id.* Accordingly, we conclude that the trial court abused its discretion by applying the interest of justice exception to preclude defendants from recovering offer of judgment sanctions.

IV

We affirm the trial court's dismissal of plaintiffs' second amended complaint because plaintiffs have failed to demonstrate a genuine issue of material fact

regarding the claims alleged in that pleading, have failed to reallege their WPA claim, and have failed to sufficiently contest portions of the trial court's decision. We reverse the trial court's denial of defendants' motion for offer of judgment sanctions because the interest of justice exception does not prohibit an award of attorney fees and because the mere ability to file a motion for summary disposition at an earlier stage of the proceedings does not constitute an "unusual circumstance" justifying application of the exception.

Affirmed in Docket No. 245339, reversed in Docket No. 248908, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.