*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SALWAN ATTO and SOO HOTELS, INC.,

        Plaintiffs/Counterdefendants/Cross-
        Defendants-Appellees,

v

DOMINIC SHAMMAMI,

        Defendant/Counterplaintiff/Cross-
        Plaintiff-Appellant,

and

SOO HOTELS, INC.,

        Defendant/Counterplaintiff-Cross-
        Plaintiff,

and

MAA VENTURES, INC., HOLLANDER ELLISON
& ASSOCIATES, and KIM WESTON,

        Defendants.

UNPUBLISHED
July 15, 2025
2:51 PM

No. 367147
Oakland Circuit Court
LC No. 2020-180156-CB

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant, Dominic Shammami, appeals as of right the opinion and order, issued after a bench trial, in favor of plaintiffs Salwan Atto (plaintiff) and Soo Hotels, Inc. (Soo Hotels). The trial court found in favor of Soo Hotels and against defendant in the amount of $2,029,237.35 for embezzlement, statutory, and common-law conversion after the calculation of treble damages.

-1-

Additionally, plaintiff received an award of $338,206.23 against defendant for the violation of MCL 450.1489(1) (shareholder oppression). The trial court further awarded plaintiff and Soo Hotels reasonable attorney fees and court costs. On appeal, defendant does not contest liability but contends that the trial court erred in its calculation of damages and improperly issued a double recovery for a single injury. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The Comfort Inn located in Sault Ste. Marie, Michigan, was owned and operated by Dia Shammami (Dia – defendant's father) and Ihsan (a/k/a Shawn) Atto (plaintiff's brother).[1] The owners created a management company, Saint Marie Hospitality, Inc. (Saint Marie), to operate the Comfort Inn. The Comfort Inn is a brand operated within Choice Hotels. The advantage of operating a hotel under a "flag" name (running a hotel under a specific brand or franchise name) was that users could go to the Choice Hotel brand website and it would direct them to franchisees in their selected area. Shawn moved to the Upper Peninsula to operate the Comfort Inn, but became ill in 2016, and had to leave to seek medical treatment downstate. Later in 2016, the hotel breached the terms of the franchise agreement by failing to make improvements and lost permission (or the "flag") to operate as a Comfort Inn. Consequently, Dia's son, defendant, and Shawn's brother, plaintiff, formed Soo Hotels, and operated the hotel independently until they were able to regain the Choice Hotels franchise name.

At some point, plaintiff alleged that defendant prevented him from examining the corporate books, opened a different bank account at a new bank, and would not allow plaintiff to have access. Plaintiff also claimed that defendant began to use the Soo Hotels' account to pay for personal expenses, paid himself an excessive monthly management fee, and failed to deposit the cash payments. Ultimately, plaintiff filed suit on behalf of himself and the corporate entity, Soo Hotels, raising claims of embezzlement, statutory and common-law conversion, breach of fiduciary duty, breach of contract, and shareholder oppression. After a bench trial, the court rendered a verdict in favor of plaintiff and Soo Hotels. The trial court determined that there was a difference between an ownership interest that made capital improvements to property and a management operation. It also found that there was an agreement to pay defendant a monthly management fee of $3,500. Yet, defendant deemed himself entitled to additional compensation and wrote checks to himself. He further blocked plaintiff's access to the corporate records. Defendant also represented to the bank, the accountant, and the hotel manager that plaintiff no longer held an interest in Soo Hotels, and should not be given information. Indeed, at trial, defendant admitted that he took $800,000 from Soo Hotels because he believed he was entitled to it. Although defendant heralded his actions in running the hotel, the hotel lost its flagship when defendant was in charge and the payment of bills were not current. In light of the testimony and financial exhibits, the trial court rendered a damage award in favor of plaintiff and Soo Hotels and declined the request to dissolve the

---

[1] Dia Shammami filed suit against Ishan Atto in Oakland County Circuit Court, Case No. 2019-172189-CB, assigned to Judge Michael Warren. According to the case's docket entries, the case was disposed of on October 10, 2023. No claim of appeal was taken from the litigation between the hotel owners.

-2-

corporate entity, instead leaving a management company in place to operate the hotel. From this decision, defendant appeals.

## II. STANDARD OF REVIEW

In *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 392; 964 NW2d 846 (2020), this Court delineated the following standards applicable to a bench trial:

> "This Court reviews a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003) (citations omitted). "The construction and interpretation of an unambiguous contract is a question of law that we review de novo." See *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002). "The extent of a party's rights[ . . .] is a question of fact, and a trial court's determination of those facts is reviewed for clear error. A trial court's dispositional ruling on equitable matters, however, is subject to review de novo." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

## III. DAMAGE CALCULATION

Defendant first contends that the trial court clearly erred in its calculation of damages. We disagree.

As an initial matter, we note that defendant's brief on appeal does not comply with the court rules. MCR 7.212(C)(6) provides that the appellants' brief must contain a statement of facts that is "a clear, concise, and chronological narrative." Additionally, "[a]ll material facts, both favorable and unfavorable, must be fairly stated without argument or bias." The statement of facts must contain specific page references to the transcript, pleadings, or other pertinent information filed with the trial court. This citation to the record is necessary to delineate: (a) "the nature of the action;" (b) "the character of pleadings and proceedings;" (c) "the substance of proof in sufficient details to make it intelligible, indicating the facts that are in controversy and those that are not;" (d) important dates of instruments and events; (e) the trial court's ruling and orders; (f) "the verdict and judgment;" and (g) any other dealings pertinent to understand the controversy and questions involved. MCR 7.212(C)(6)(a-g).

Defendant's brief on appeal identified the witnesses that testified at trial and did not summarize their testimony or cite to the transcripts. Additionally, many of the witnesses testified about financial information, and those financial summaries were admitted as exhibits. Defendant contends that the trial court's damage verdict was clearly erroneous, but simply challenges the decision itself and does not address the documentation and testimony admitted at trial and offered to support a damage award. This Court is an error-correcting court, *Apex Laboratories Int'l, Inc v Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020), and an appellate court will not search the record for factual support for an appellant's claims, *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004). See also MCR 7.212(C)(7) ("Facts stated must be

supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court."). And, "[i]f determination of the issues presented requires the study of a . . . written instrument, or document, or relevant part thereof, this material must be reproduced in the brief or in an addendum to the brief." *Id*. Despite this noncompliance, we nonetheless address the merits of the issues.

Appellate review of a trial court's determination of damages after a bench trial is reviewed for clear error. *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 255; 792 NW2d 781 (2010) (citation omitted). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Seifeddine v Jaber*, 327 Mich App 514, 515; 934 NW2d 64 (2019) (quotation marks and citation omitted). And when a trial court's factual findings are premised on witness credibility, this Court accords special deference to those findings. *Id*.

A party claiming damages has the burden of proving them with reasonable certainty. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 525; 687 NW2d 143 (2004). A damage award is not clearly erroneous where the damage award was within the range of the evidence presented, and the trial court was aware of the case issues and correctly applied the law. See *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513, 516; 667 NW2d 379 (2003). A party may not recover damages that are speculative or premised on conjecture. *Chelsea Investment Group LLC*, 288 Mich App at 255. But damages need not be determined with mathematical certainty provided there is a reasonable ground for computation. *Id*. "Moreover, the certainty requirement is relaxed where the fact of damages has been established and the only question to be decided is the amount of damages." *Ensink*, 262 Mich App at 525 quoting *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 44, 108; 535 NW2d 529 (1995) (emphasis deleted).

In a breach of contract action, the measure of damages is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014) (quotation marks and citation omitted). "Common law conversion . . . consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Department of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 13-14; 779 NW2d 237 (2010) (quotation marks and citation omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or be delivering it without authorization to a third party." *Id*. at 14. Generally, in an action for conversion, the measure of damages is the value of the converted property at the time of the conversion. *Ehman v Libralter Plastics, Inc*, 207 Mich App 43, 45; 523 NW2d 639 (1994). If the converted property does not have regular market value, damages are measured by the property's value to the owner at the time of the conversion. *Id*.

The elements of embezzlement are:

(1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and

-4-

(6) at the time of conversion, the defendant intended to defraud or cheat the principal. [*People v Lueth*, 253 Mich App 670, 683; 660 NW2d 322 (2002).]

MCL 600.2919a addresses recovery of damages for embezzlement or conversion:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Defendant does not contest the satisfaction of the elements of the claims, but merely challenges the calculation of damages. But, defendant fails to cite any evidence admitted at trial to demonstrate that the trial court's calculation was erroneous. In the trial court's opinion and order, it found that Soo Hotels was entitled to judgment against defendant for embezzlement, statutory, and common-law conversion and that plaintiff met the burden of proof to establish damages. In its factual findings, the trial court cited the evidence offered in support of damages, stating:

The evidence at trial made it clear that [defendant] ran the hotel as if he was the sole shareholder. In addition to other checks, [defendant] wrote himself several checks, including, a check on August 28, 2019, in the amount of $100,000 and a check on or about March 8, 2021, in the amount of $100,000, which posted on March 11, 2021, and which is astonishingly the exact day that this Court's predecessor granted a Preliminary Injunction. Additionally, [defendant] unilaterally decided to file for bankruptcy (Ex 21) after writing checks that made the company seemingly insolvent. See for example, 2019-2021, Bank Statements, Ex 16; Ex 17; Ex 27, Ex 28, Ex 31, Ex 33.

[Defendant's] filing for Bankruptcy stayed this case. However, the Bankruptcy Court subsequently dismissed the action. See Ex 23. On the very day that the bankruptcy was dismissed, [defendant] regained control of the bank account and immediately wrote himself a check for $24,500, which, he testified, made up for the management fees that he unilaterally believed he was owed. Ex 33.

Under the agreement, however, [defendant] was entitled to receive the amount of $3,500 a month from March 2017-July 2021 (53 months), which totals $185,500. He nevertheless argues that he was entitled to some of the money that

he took because as the manager of the hotel, he believed that he was entitled to receive at least $8,000 a month, as testified to by his expert. The agreement, however, had always been a management fee of $3,500 a month. This was also shown by the checks that [defendant] wrote to himself. There was never any discussion nor resolution for a greater amount to be paid to [defendant]. In fact, even the Trustee in the Bankruptcy Court found that $3,500 a month was the appropriate amount of compensation as the manager of the Hotel.

The trial court found that defendant took $969,951 for personal use and that the evidence to support this amount consisted of company checks that defendant wrote to himself and the testimony of the parties. Indeed, at trial, plaintiff admitted as exhibit 26 checks reflecting that defendant initially paid himself the monthly management fee of $3,500. But, defendant later began to write checks to himself that far exceeded the $3,500. Consequently, the trial court noted that although plaintiff requested $969,951 in damages, it deducted $50,000 (the stipulated licensing fee), $58,538.55 because the claimed missing cash was not supported by the evidence for conversion, and $185,500 in authorized monthly management fees ($3,500 x 53 months). This reduced plaintiff's damages to $676,412.45, which the court then multiplied by three for treble damages, resulting in a judgment for Soo Hotels in the amount of $2,029,237.35 plus interest, costs, and attorney fees. The trial court's calculation of damages was within the range of the evidence presented, and the trial court was aware of the issues involved and correctly applied the law. *Alan Custom Homes, Inc*, 256 Mich App at 513, 516. Contrary to defendant's blanket conclusions, the trial court did not clearly err in its damage determination. *Bayberry Group, Inc*, 334 Mich App at 392.

Furthermore, at trial, when defendant was asked about the finding by the certified public accountant (CPA) that defendant had taken over $800,000 from Soo Hotels, defendant testified, "I don't disagree with that." Defendant also expressed entitlement to 100% of that money as "management fees for me." Additionally, he requested credits for improvements to the hotel for which Soo Hotels would derive no benefit as an operator because it was not an owner of the premises. Despite defendant's acknowledgment and claimed entitlement to taking nearly $800,000, the trial court simply held him to this testimony as an admission, but reduced the damage award to $676,412.45 before imposing treble damages.

Defendant contends that the trial court's erroneous calculation and reliance on the CPA's report was evidenced by its reference to the report as "kind of a disaster." Therefore, the court should not have relied on the report. We note that the trial court questioned defendant about his exclusion of plaintiff from the new Soo Hotels' account. Defendant acknowledged that he did not include plaintiff's name on the account and did not allow him access. The trial court then stated, "Now, for the Exhibit Number 19, which is kind of a disaster, but I have a new one, that's the - - I don't know if you have it in your book there. It's a spreadsheet." We cannot conclude that the trial court's reference was to the content of the report as opposed to the version before it. It is not apparent that the "disaster" statement was a comment on the work product.

Defendant also asserts that the trial court should have expressly addressed whether wages were included in the damage award. The trial court delineated the numbers it was relying on and subtracting to calculate damages. The trial court cited to exhibits admitted at trial to calculate damages that defendant wrongfully converted. Yet, defendant does not address those exhibits

cited by the trial court, and therefore, does not challenge the basis of the trial court's ruling. See *Derderian*, 263 Mich App at 381.

More importantly, the trial court was not required to calculate damages with mathematical certainty if there is a reasonable ground for computation. *Chelsea Investment Group LLC*, 288 Mich App at 255. "Moreover, the certainty requirement is relaxed where the fact of damages has been established and the only question to be decided is the amount of damages." *Ensink*, 262 Mich App at 525, quoting *Hofmann*, 211 Mich App at 108 (emphasis deleted). In this case, defendant admitted to taking nearly $800,000 from Soo Hotels, claiming it was a proper management fee for his services. The trial court was not required to address every line-item requested by plaintiff or claimed deduction by defendant. In light of the record, the trial court did not clearly err in its determination regarding damages.

Finally, defendant contends that the trial court erred by failing to consider the $170,000 that defendant contributed to the company. In its opinion, the trial court concluded that Soo Hotels "does not have any ownership interest in the building or real estate; other members of the family own the building/real estate and are embroiled in separate litigation in front of Judge Warren of the Oakland County Circuit Court." The trial court further noted that historically, "the building owner made, or at least paid for, the improvements to the building, while the management company managed the hotel." The parties disputed whether defendant paid for items that should be offset by Soo Hotels, a managing entity, or rather, whether capital improvements were made to the property that should be paid for by Saint Marie in Judge Warren's case. Furthermore, there was evidence that Dia signed those checks, not defendant. In light of the evidence that Soo Hotels was merely a management operation and would not derive a benefit from improvements to the building, the trial court did not clearly err in failing to offset $170,000 purportedly made by defendant.

## IV. DOUBLE RECOVERY

Defendant next contends that the trial court improperly awarded a double recovery for a single injury. We disagree.

There is no indication that this issue was raised in the trial court. Under Michigan's raise or waive rule of appellate review, litigants must preserve an issue for appellate review, and a party asserting error must demonstrate that the issue was raised in the trial court. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Accordingly, this issue was waived. Regardless, recovery under the Revised Judicature Act does not preclude other remedies. See MCL 600.2919a(2); MCL 450.1489(1)(f); *Dep't of Agriculture*, 485 Mich at 13-14.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

-7-