*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GARCIA, Minors.

UNPUBLISHED
August 27, 2019

No. 347162
Saginaw Circuit Court
Family Division
LC No. 17-035078-NA

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father appeals as of right the order terminating his parental rights to two minor children under MCL 712A.19b(3)(a)(*ii*) (desertion of child), (c)(*i*) (conditions leading to adjudication continue to exist and no reasonable likelihood of rectification), (g) (failure to provide proper care or custody and no reasonable likelihood of providing proper care and custody), (j) (likelihood of harm to child if returned to parent), and (m)(*i*) (parent convicted of murder and continuation of parent-child relationship would be harmful to child). We affirm.

## I. BACKGROUND

The two children were born in 2004 and 2005. Respondent has been incarcerated in Louisiana since early 2006, following his participation in a horrifying and gruesome kidnapping, rape, beating, and murder. See *Louisiana v Garcia*, 108 So 3d 1, 6-12; 2009-1578 (La 11/16/12). In 2008, a jury unanimously convicted respondent and returned a sentence of death. Respondent has expressed optimism for his appeal; nonetheless, he has been on death row since that time. Respondent also admitted that nobody from his family had seen the children since 2008. Even before respondent's incarceration, he had not seen the oldest child since the child was approximately six months old, and he had never even seen the youngest child. As of the date of the termination hearing, his total involvement in the children's lives consisted of a few letters from prison. In the meantime, the children resided with their mother, LB. The instant proceedings commenced in July of 2017, due to LB's husband's threats to shoot the children and due to LB's drug use. LB is not at issue in this appeal. The court terminated respondent's parental rights based on his history of violence, his incarceration, the little interest he had shown in the children, and his failure to support or provide a care plan for them.

## II. STANDARD OF REVIEW

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3); this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). This Court also reviews for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even if some evidence supports it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *In re Mason*, 486 Mich at 152. "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). However, constitutional issues raised for the first time on review are reviewed for plain error affecting substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). A plain error is an error that is "clear or obvious." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## III. DUE PROCESS

Respondent first contends that his due-process rights were violated because petitioner allegedly treated him differently from how it would have treated a non-incarcerated parent. Respondent did not raise this constitutional issue below.

> There are two types of due process: procedural and substantive. Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker. The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests. Ultimately, due process requires fundamental fairness. [*In re TK*, 306 Mich App at 706.]

Respondent's primary contention is that petitioner did not investigate his relatives for placement of the children and that this was unfair because petitioner would have done so for a person who was not incarcerated. The record shows otherwise.

At the July 2017 preliminary hearing, respondent stated that his mother, his father, and his sister could be considered as possible placement options for the children, despite admitting that no members of his family had seen the children since 2008. LB objected to placement of the children with respondent's family, indicating issues with domestic violence and restraining orders against respondent. However, the trial court directed petitioner to "follow up on that." At a subsequent hearing, the foster care worker, AD, reported that "the CPS worker" had looked into "fictive kin" placements for the children and found "no available relatives for placement." AD stated that she would look into placement with respondent's family members "if people were provided to [her]." Respondent participated by telephone in several further hearings without mentioning any relative who might be available for possible placement, either personally or through his attorney. At one hearing, LB mentioned some of her own relatives, and respondent's attorney's subsequent statements made no mention of potential placements with *respondent's* relatives. In addition, AD stated that respondent had not "offered a care plan" for the children.

Under all these circumstances, respondent has not shown any plain error concerning the potential placement of the children with his relatives. He made a single, vague reference to his

father, his mother, and his sister as possible placement options. However, he never followed up with any further indications that such relatives even existed, despite numerous opportunities to do so and an express statement by AD that she would investigate relative placements if she received any names. The record shows that the only reason petitioner did not investigate respondent's relatives for placement had nothing to do with respondent's incarceration. We find no clear error or unfairness regarding the issue of relative placement.

Respondent additionally contends that "his attempts to communicate with his children were also met with resistance." At the initial disposition in January 2018, respondent's attorney noted that respondent wanted to have contact with the children. The court indicated that such contact could occur if a therapist deemed it appropriate. By February of 2018, no therapists had yet been contacted. However, by May of 2018, the children had been approved for contact by letter with respondent, and both children would be assisted by a therapist in addressing correspondence from respondent. Respondent was then permitted to send letters to the children. Considering the negligible to nonexistent history of contact respondent had with the children and respondent's death sentence, petitioner had every reason to exercise caution and care. We are therefore unpersuaded that petitioner engaged in unfair or improper delay.

Finally, respondent states that "the criminal status of the parent is not a sufficient basis by itself for the . . . court to assume jurisdiction." Respondent's mere criminal status was *not* the sole basis for jurisdiction. Instead, the court relied on respondent's admissions that he could not provide care or any physical, financial, or emotional support for his children because he was incarcerated on death row. No plain error is apparent concerning the assumption of jurisdiction. We finally note that respondent or his attorney participated in all hearings, and AD testified that she was maintaining contact with respondent by way of mail.

## IV. STATUTORY GROUNDS

Respondent next argues that the trial court erred by finding statutory grounds for termination and by finding that termination was in the children's best interests. We disagree.

As noted, the trial court found grounds for termination under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), (j), and (m)(*i*). MCL 712A.19b states, in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(a) The child has been deserted under either of the following circumstances:

* * *

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

* * *

-3-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(m) The parent is convicted of 1 or more of the following, and the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child:

(*i*) A violation of . . . MCL . . . 750.316 . . .

\* \* \*

(*iii*) A federal law or law of another state with provisions substantially similar to a crime or procedure listed or described in subparagraph (*i*) or (*ii*).

Only one statutory ground is required for termination of a parent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Initially, respondent does not challenge the trial court's factual findings under MCL 712A.19b(3)(a)(*ii*). Consequently, we need not grant him any appellate relief. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Nevertheless, the trial court did not err in finding this ground established by clear and convincing evidence. As noted, even before respondent's incarceration, he had no contact with the youngest child at all,

---

[1] Subsection (g) was amended by 2018 PA 58, effective June 12, 2018. Because, as will be discussed, we need not address subsection (g), we also need not address the significance of the amendment.

and only "some contact" with the older child for the first few months of the child's life. He had, in the meantime, provided no "alternative care plan for his children." It was adequately proved that respondent deserted the children for 91 or more days and did not seek custody of them during that period. MCL 712A.19b(3)(a)(*ii*).

Furthermore, respondent's undisputed conviction of first-degree murder in Louisiana in violation of La Rev Stat § 14:30, see *Garcia*, 108 So 3d at 5, is a "law of another state with provisions substantially similar to" MCL 750.316. MCL 712A.19b(3)(m)(*i*) and (*iii*). Considering the evidence of respondent's violent nature and disinterest in the children, even beyond the depraved nature of the entire Louisiana offense, clearly supports the trial court's finding that "continuing the parent-child relationship with the parent would be harmful to the child." MCL 712A.19b(3)(m).

Under MCL 712A.19b(3)(c)(*i*), the conditions leading to adjudication were that respondent could not provide care or financial, physical, or emotional support for the children because he was lodged on death row. These conditions continued to exist at the time of termination.[2] Although respondent claimed that his chances on appeal were "pretty good," a contention we find dubious, he had been sentenced in July 2008, and as of the termination hearing in December 2018, he was still incarcerated. Furthermore, even if he prevailed in an appeal, the evidence shows that his tendency toward violence and neglect will not have changed. Meanwhile, the children are now aged 14 and 15. The court did not clearly err by finding "no reasonable likelihood that the conditions [leading to adjudication] will be rectified within a reasonable time considering the [children's] age[s]." MCL 712A.19b(3)(c)(*i*).

Because there were at least three statutory bases for termination amply proved by clear and convincing evidence, we need not analyze whether termination was appropriate under MCL 712A.19b(3)(g) and (j).

## V. BEST INTERESTS

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted); see also MCL 712A.19b(5).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the

---

[2] Because respondent was still on death row, he was clearly unable to provide financial or physical support. Given respondent's criminal status, the lack of bonds he had with the children, and the fact that they did not want to write back to him, it appears that he was also incapable of providing adequate emotional support.

parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

LB provided ample evidence to the effect that respondent had a history of committing domestic violence. The events that resulted in his incarceration further show respondent to be a violent individual with no apparent regard for others. *Garcia*, 108 So 3d at 5-12. In addition, he had no bonds with the children. He had not seen MJG since MJG was a toddler, and he had never had any physical contact with LJG. He was awaiting the implementation of a death sentence, he had no way to provide any financial support for the children, and in any event, he had shown no interest in providing financial support for the children. He would lack housing, employment, parenting skills, and probably any basic human capacity for love or affection even if he were to be released from prison. The trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights. *In re Mason*, 486 Mich at 152.

Respondent reiterates that the children could have been placed with his relatives, and he further suggests that a guardianship could have been utilized. As discussed, respondent failed to avail himself of numerous opportunities to follow through on the possibility of relative placement. The possibility of a guardianship was raised for the first time in closing arguments at the termination hearing, essentially by generally incorporating arguments made by LB. In any event, respondent continues to provide no offer of proof regarding which relatives were available or how they might be appropriate. Under all the circumstances, including the children's need for permanency, the trial court did not clearly err by terminating respondent's parental rights instead of delaying permanency by ordering that a guardianship be pursued.

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause