*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHEHNAZ ABDRABBOH, formerly known as
SHEHNAZ ZEINEH,

        Plaintiff-Appellant,

v

WISAM ROBERT ZEINEH,

        Defendant-Appellee.

UNPUBLISHED
March 10, 2022

Nos. 356537; 358424
Clinton Circuit Court
Family Division
LC No. 2016-026965-DM

Before: REDFORD, P.J., and SAWYER and MURRAY, JJ.

PER CURIAM.

In Docket No. 356537, plaintiff appeals by delayed application for leave to appeal the circuit court's order for plaintiff's and defendant's child to attend school in defendant's school district and modifying plaintiff's parenting time.[1] This Court consolidated that appeal with Docket No. 358424, in which plaintiff appeals by delayed application for leave granted the court's order granting defendant sole legal custody of the child.[2] For the reasons stated in this opinion, we affirm the circuit court's orders.

## I. FACTUAL BACKGROUND

The parties married in 2014, had one child together, and divorced in 2017. The circuit court awarded the parties joint legal and physical custody of the child with the parties having a week-on week-off custody arrangement. The parties resided in different counties. In August 2020, defendant enrolled the child in kindergarten in his local school district without plaintiff's consent. Because of the COVID-19 pandemic, the school conducted classes virtually via Zoom. Defendant testified that before enrolling the child he attempted to have conversations with plaintiff about

---

[1] *Abdrabboh v Zeineh*, unpublished order of the Court of Appeals entered May 5, 2021 (Docket No. 356537).

[2] *Abdrabboh v Zeineh*, unpublished order of the Court of Appeals entered November 1, 2021 (Docket No. 358424).

where to enroll the child in school, including the option of enrolling him in a neutral district while virtual school took place, but plaintiff refused to discuss the issue. Defendant considered virtual schooling best for the child because he had safety concerns about the pandemic and the child's asthma. Plaintiff testified that she did not refuse to discuss the issue but instead preferred to have the child enrolled in her local school district in a blended in-person and virtual format.

The child attended his first two days of school virtually with plaintiff's assistance. At the hearing on the school selection issue, plaintiff testified that she did not realize that he actually attended regular school and thought that he participated in an experiment to see whether virtual school would be feasible. Following an exchange of custody with defendant, plaintiff contacted the child's school and informed the administration that she did not consent to the child's attending school there. That prompted defendant to file an emergency ex parte motion seeking continuation of the child's school attendance which the circuit court granted without prejudice to either party. The order maintained the parties' week-on week-off custody arrangement with the child attending school virtually.

While the school matter remained pending, defendant moved to modify the child's custody on the ground that plaintiff had unilaterally changed parenting exchanges, made derogatory statements in the presence of the child, and returned the child with his school iPad cracked. In the alternative to granting defendant sole legal and physical custody, he requested that the parties' parenting-time order be modified to have the child reside with defendant during the school year and plaintiff during the summer.

Following an evidentiary hearing at which the circuit court found that the child's school attendance in defendant's district served the child's best interests, the court entered an order on December 29, 2020, that the child continue attending kindergarten there with the same parenting-time arrangement until the beginning of the 2021-2022 school year when the child would reside with defendant during the school year and reside with plaintiff during the summer, with each party having three weekends per month while the child lived with the other parent. The court ordered that the parties continue sharing joint legal and physical custody of the child.

In January 2021, defendant moved for sole legal custody on the grounds that plaintiff had unilaterally contacted the child's school and requested that the child stop participating in standardized testing and had taken the child out of school for two days, that she failed to do schoolwork with the child and turn in his homework assignments, and she had taken the child to a medical appointment without informing defendant. The court held a hearing during which plaintiff essentially admitted the truth of the allegations in defendant's motion. The court, therefore, entered a temporary order granting defendant legal custody and ordered that an evidentiary hearing would be held on March 25, 2021.

The circuit court held a legal custody evidentiary hearing at the conclusion of which it found that a proper cause or change of circumstances warranted revisiting its previous custody order. Specifically, it found that plaintiff had made decisions that could significantly affect the child's education without communicating with defendant, had not followed a court order requiring structured medical appointments, and she failed to properly handle the child's prescription medication. The court found by clear and convincing evidence that it served the child's best interests for defendant to have sole legal custody.

## II.  STANDARDS OF REVIEW

Under the Child Custody Act, MCL 722.21 *et seq*., "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue."  MCL 722.28.  The trial court's factual findings are against the great weight of the evidence only if the evidence clearly preponderates in the opposite direction.  *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010).  In the child custody context, a palpable abuse of discretion occurs when the result so violates fact and logic that it evidences the court's lack of judgment, passion, or bias, rather than the exercise of reason.  *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006).

We "review under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances."  *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019) (citation omitted).  "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction."  *Id*. (citation omitted).  Further,

> A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction.  An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions.  Questions of law are reviewed for clear legal error.  A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law.  [*Id*. (quotation marks, alteration, and citation omitted).]

## III.  ANALYSIS

### A.  EX PARTE ORDER

Plaintiff argues that defendant's enrollment of the child in his school district without plaintiff's consent stripped the circuit court of decision-making authority.  Plaintiff, however, does not cite any legal authority to support her contention that one parent not agreeing to school enrollment, standing alone, removes the court's decision-making authority or results in the court abusing its discretion if it orders the child to continue attending that school.  A party abandons an issue by failing to provide any authority to support its assertions.  *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000).  "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim."  *Id*. at 132-133.

Regardless, there is no indication that the circuit court palpably abused its discretion by ordering the child to continue attending kindergarten in defendant's school district.  The record reflects that, because plaintiff complained to the school that she did not consent to the child's attendance, the school would not allow him to attend unless by court order.  Because the child was not enrolled in any other school, he could not attend any other school.  Given the predicament and considering the child's best interests, the circuit court provided appropriate temporary relief until the matter could be presented by the parties and determined by the court.  The court's ex parte order provided for the child's continued education and gave plaintiff notice and opportunity to

object and be heard. Plaintiff was not prejudiced by the order because the child had just started attending kindergarten and his virtual attendance did not affect plaintiff's parenting time. The court's decision did not so palpably violate fact and logic that it demonstrated passion or bias.

Plaintiff argues that the court failed to acknowledge that the child's enrollment was obtained by defendant's illegal action of enrolling the child in school without plaintiff's consent. The record does not support her assertion. Both defendant's ex parte motion and plaintiff's response acknowledged that plaintiff had not consented to the enrollment of the child in defendant's school district. The circuit court also heard the parties' respective arguments on the subject at the hearing on the motion and gave due consideration to defendant's alleged improper conduct. The circuit court ordered that the child continue the enrollment without prejudice, and when the court made its ultimate decision, it did not base it on the child's already being enrolled in defendant's district.[3]

## B. THE COURT'S SCHOOL DECISION

Plaintiff raises several arguments regarding the best-interest factors related to the child's school, contending that the circuit court's findings were against the great weight of the evidence when it found certain factors in favor of defendant instead of plaintiff. We disagree.

The best interests of the child must control the court's child custody decision. MCL 722.25(1). It is the trial court's duty to determine a child's best interests if the parents cannot agree on important matters, including the child's education. *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993). This Court generally defers to the trial court's credibility determinations and decisions regarding the weight of the best-interest factors. *Kessler v Kessler*, 295 Mich App 54, 64; 811 NW2d 39 (2011).

To determine the child's best interests, the circuit court must consider the factors set forth in MCL 722.23 which provides:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

---

[3] We note that plaintiff testified at the evidentiary hearing that she intended to enroll the child in her school district the week after defendant enrolled the child in defendant's district, but she did not complete the process because the child was already enrolled in school.

-4-

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Respecting the first factor, when considering a child's best interests, the circuit court must consider "[t]he love, affection, and other emotional ties between the parties involved and the child." MCL 722.23(a). The record reflects that both plaintiff and defendant love the child and the child also loves them and has a bond with both his parents. The circuit court found that this factor favored neither party. The court did not err in this regard.

The court must also consider "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). Plaintiff argues that the circuit court should have found that the parties' capacity to provide the child with guidance favored plaintiff because plaintiff's struggle to be involved in the child's schooling resulted from defendant's unilateral decision to enroll the child in school. The record, however, indicates that the parties' communication on the subject of the child's schooling had deteriorated before defendant enrolled the child, and he had done so because of the parties' communication and cooperation problems. The record reflects that, after the court's order requiring the child to continue attending school in defendant's district, during his parenting time defendant took an active role with the child to assist his education and he kept plaintiff informed about the child's school activities. Defendant testified that he provided plaintiff with reports about what the child learned in school because he believed communication would foster the child's learning environment. Defendant also testified that plaintiff never told him how the child did or what school activities she completed with him. Plaintiff affirmed that defendant provided a summary inconsistent with what was being done in the child's classes.

The record indicates that the circuit court considered the evidence regarding the parties' communication and cooperation problems that arose regarding the child's school. The court also considered the testimony that established that plaintiff had not reciprocated defendant's updates about the child's schoolwork and activities. The record indicates that defendant acknowledged the effect the parties' disagreements had on the child. The court's finding regarding updates about the child's school rested on its determination of the parties' respective credibility. The record evidence does not clearly preponderate against the court's finding that defendant communicated more about the child's education than plaintiff. The record supports the circuit court's finding that this factor favored defendant.

Plaintiff argues further that her struggle resulted from defendant's unilateral decision to enroll the child in school. Plaintiff testified that she had issues submitting the child's schoolwork by uploading via an app because she did not have the child's iPad. Defendant testified, however, that plaintiff requested that defendant not send the iPad. Plaintiff did not provide contrary testimony. Plaintiff testified that she spoke to a teacher about the assignments and had been offered an alternative way to submit them on more than one occasion. She felt that it seemed like the teacher did not really think it mattered. Plaintiff testified that she also asked for accommodations with picking up assignments because it was not feasible for her to do so, and the child's teacher said that she would try to accommodate plaintiff by sending things via e-mail, but then she changed her mind. Defendant agreed that the child's school required picking up materials biweekly. He told the child's teacher that he would send materials and books to plaintiff overnight. Defendant testified that he picked up the materials and intended to send them. Both plaintiff and defendant testified that plaintiff told him not to do so.

The evidence does not clearly preponderate in favor of a finding that defendant's decision to enroll the child in defendant's district resulted in plaintiff's difficulty participating in the child's schooling. The evidence supports the circuit court's finding that the parties' capacity and willingness to provide the child with education and guidance favored defendant. While plaintiff may have been upset with the circuit court's decision to temporarily order the child to continue school in a district to which she had not consented, the court appropriately focused on the child rather than on plaintiff when determining this best-interest factor. The record reflects that, after the child started school, regardless of plaintiff's preference, plaintiff did not provide guidance by ensuring that the child's assignments were completed and timely submitted, or by trying to communicate about the child's education. Plaintiff has failed to establish that the evidence clearly preponderated against the court's finding. The circuit court's findings were not against the great weight of the evidence.

Plaintiff next argues that the court's finding regarding factor (c), MCL 722.23(c), respecting the parties' capacity and willingness to provide the child with care, was against the great weight of the evidence because defendant's reservations about in-person school during the COVID-19 pandemic were merely a tactical ruse. The evidence does not clearly preponderate against the court's finding that defendant expressed appropriate concern about in-person school during the COVID-19 pandemic. The record indicates that, as the conditions of the pandemic appeared to be changing for the better by December 2020, defendant indicated that his reservations about the child's in-person school attendance might change depending upon CDC guidance and the school's decision which he intended to support.

In October 2020, defendant testified that, when the COVID-19 pandemic started, he was concerned about the child being in public. The child's medical history included that he had repeated upper respiratory infections and had been diagnosed with asthma, which was specifically concerning to defendant given how the virus worked. Defendant testified that he "just wanted the child to attend school and I thought that the online learning environment was the safest for that considering everything going on." Defendant had offered to plaintiff to mutually choose a neutral online school so that the current parenting order could be maintained. According to defendant, when plaintiff had discussed the child attending school in plaintiff's district, he understood that the school provided a hybrid virtual and in-person attendance. Defendant testified that he would not oppose the child attending school in-person when the COVID-19 pandemic resolved. Defendant testified that he received a survey from the school about whether to continue online learning, and he had indicated that his preference was to maintain remote learning. Plaintiff preferred not to do online schooling. Plaintiff did not testify about the child's asthma or respiratory conditions and the record does not indicate that she factored those things into her position regarding school attendance.

In December 2020, defendant expressed his preference that the child attend school in-person in January 2021 if the school safely operated within CDC guidelines. Defendant testified that the school generally had not had problems with the COVID-19 pandemic. The record does not support plaintiff's contentions that he merely tactically posed reluctance to have the child attend school in-person as a ruse to win the dispute.

When considering a child's best interests, the trial court must consider "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). In this case, the circuit court found that this factor slightly favored defendant. The record indicates that both parties were able to provide for the child's food, clothing, and needs while the child stayed with each parent. Although both parties were employed, defendant historically had more stable employment. Plaintiff admitted that she had changed her employment a number of times interspersed with periods of unemployment. The record indicates that plaintiff had struggled financially and still owed defendant more than $4,000 in child support, which defendant had not pursued because he could support the child with the income he earned. Plaintiff also testified that she moved a few times since the divorce including one time after her landlord issued a notice to quit. The court found that "there was some mention about the child's eyes and failing an eye exam and nothing was done by the mother to follow up on that." The court found that defendant asked a doctor to check the child's vision at an appointment for a throat problem. Defendant testified regarding his concerns about the child's asthma diagnosis and about protecting the child from exposure to COVID-19 in in-person classes. Plaintiff did not testify about the child's medical conditions. The record supports the court's finding that this factor favored defendant.

The evidence does not clearly preponderate in the opposite direction of the circuit court's finding regarding the parties' capacity and disposition to provide the child with medical care. Defendant expressed a concern about the child's asthma and the COVID-19 pandemic, but plaintiff did not mention the child had asthma. Further, the record indicates that defendant's position about in-person schooling at the end of December 2020, only changed after he had had an opportunity to observe how the school district handled the COVID-19 pandemic. The record, therefore, does

not support plaintiff's contention that defendant used the pandemic as a means of gaining a manipulative or tactical advantage.[4]

Plaintiff also argues that the trial court should have found that the stability of the parties' home environments favored plaintiff because, while plaintiff moved more often, defendant was involved in his fourth marriage. The court's finding regarding the parties' relative stability was not against the great weight of the evidence.

When considering a child's best interests, the trial court must consider "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The court must also consider "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). Plaintiff's argument treats the two separate factors as a single factor. Regardless, the evidence did not clearly preponderate against the circuit court's findings that the stability of the parties' environments slightly favored defendant, and the continuity of their family units' factor equally favored both parties.

Defendant testified he served as a paramedic supervisor and had been married since January 2018, and lived at his current address since July 2018 with his wife and stepchildren. Plaintiff testified that she worked as an independent contractor physician assistant for about a year. She testified that she moved to her current address five months ago, before which she had lived a short distance away, and before that, she had moved at least twice. Plaintiff's two other children lived in her household. Both plaintiff and defendant had extended families in the locales in which they lived. The record supports the circuit court's determinations regarding these two factors. The circuit court considered factors (f) and (g) and found that neither favored either party.

Plaintiff argues that the trial court should have found that the school factor favored plaintiff because she did not actually want to remove the child from school; she simply did not want the child to attend school in defendant's school district. When considering a child's best interests, the trial court must consider "[t]he home, school, and community record of the child." MCL 722.23(h). "[G]enerally, the appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993).

The record indicates that the circuit court considered the relative merits of the parties' two school districts. The court noted the deficiencies plaintiff contended existed in the school at which defendant enrolled the child. The court, however, did not agree with plaintiff's desire that the child stop attending school until the court made a final decision which the court found would have resulted in the child potentially missing half a year of school. When asked on cross-examination if she felt kindergarten attendance important, plaintiff did not respond directly until pressed and

---

[4] The majority of plaintiff's appellate arguments do not address the basis of the circuit court's decision. This Court need not consider an argument that does not address the basis of the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). The circuit court's findings regarding this factor concerned not only the child's asthma, but also plaintiff's lack of financial support and her failure to follow up on the concerns about the child's eyes. The record supports the circuit court's decision.

then agreed but stated that "kids can do without it but it's nice that they can." Defendant testified that he considered kindergarten very important and felt his local school district's smaller, close-knit school community provided a better place for the child to learn.

Respecting this factor, the court observed that the school had asked plaintiff to stop attending the child's classes during defendant's parenting time because she tried to get the teacher's attention. The record indicates that plaintiff did not do anything to assist the child with the subjects for which he needed help and she had not followed up on the child's vision and headache issues. Defendant testified that he attended parent-teacher conferences. He stated that the child had done better in school since his baseline assessment that indicated some areas of concern. Defendant testified that he kept plaintiff advised of the child's activities and schoolwork. The court found that this factor favored defendant. The record supports the circuit court's decision in this regard.

Plaintiff next argues that plaintiff's school district offered superior schools to defendant's district and that the circuit court merely opted to maintain the status quo. Again, the record does not support plaintiff's argument.

The circuit court acknowledged that plaintiff's district's schools ranked higher than defendant's district's schools. The court, however, appropriately recognized that it had to make its decision based upon the child's best interests and not merely the schools' respective rankings. The evidence established that the child progressed satisfactorily and that the child's teacher treated the child appropriately and kindly. The record indicates that the circuit court reviewed a recording of one of the child's classes during which the child struggled with a word and the teacher responded appropriately by permitting the child to ask a question and thanked him for his question. Defendant testified that, at parent-teacher conferences, the school provided him with a baseline assessment that caused him concern, but the teacher explained that the school would work to help the child improve. The school provided a progress report that indicated the child progressing. The court's findings were not against the great weight of the evidence and the record does not support plaintiff's argument that the court's decision ignored school rankings and only sought to maintain the status quo.

Factor (i), MCL 722.23(i), concerns the reasonable preference of the child. The record indicates that the circuit court spoke with the child and he expressed no preference. The court, therefore, found that the factor favored neither party.

Respecting factor (j), MCL 722.23(j), plaintiff argues that the parties' ability to facilitate a relationship with the other parent should have favored her because defendant violated the parties' joint legal custody arrangement by enrolling the child in school. The record indicates that the circuit court considered this fact when making its decision, but this was only one fact among many.

When considering a child's best interests, the trial court must consider "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). In this case, the circuit court found that this factor favored neither party because both parties had been willing to facilitate and encourage a relationship between the child and the other parent. The record supports the court's decision.

The record indicates that the circuit court considered that plaintiff had not consented to the child's enrollment in kindergarten in defendant's school district. Both parents thought that the child should be enrolled in school but their efforts to discuss the matter resulted in an unresolved dispute over which school. Neither party sought help from the court to decide the issue. The record does not indicate that either parent attempted to alienate the child from the other parent, seriously interfered in the other's parenting time, or otherwise acted to harm the other's parental relationship with the child. The evidence does not clearly preponderate against the court's finding that the factor did not favor either party.

Plaintiff has failed to establish that the circuit court erred in any of its best-interest factors decisions related to the child's education. Plaintiff has not shown that the court's findings were not supported by the great weight of the evidence or that the child's attendance of school in defendant's district did not serve the child's best interests.

Plaintiff argues that the circuit court erred as part of its school decision by changing her parenting time to accommodate the child's school attendance because she contends that not enough evidence supported the school decision and the parenting-time decision will make her merely a weekend and summer parent. The record indicates that the court determined the child's best interests for all aspects of its decisions. The court applied the principles established in *Pierron*, 486 Mich 81, and *Lombardo*, 202 Mich App 151. The court found that a preponderance of the evidence established changes in the parties' relationship and interactions which impacted the child in a number of ways including the school issue which required the court to revisit the last custody order and consider whether it should be modified. The court assessed the current pandemic related situation which necessitated virtual school attendance but recognized that in-person classes likely would resume sometime during the school year or in the following year. The circuit court acknowledged the current equal parenting time but recognized that the child's in-person school attendance would require a change in the current custodial environment which would impact parenting time to accommodate the school and the child's education. The court applied the clear and convincing evidence standard and concluded that the record evidence established the necessity to modify parenting time to enable the child's education. The court, however, declined to change the legal custody of the child. Given the evidence presented in this case, we are not convinced that the circuit court erred in this regard. The court's findings were supported by substantial uncontroverted evidence.

## C. LEGAL CUSTODY

### 1. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Plaintiff argues that the circuit court granted the parties joint legal custody and shortly thereafter changed the child's custody to sole legal custody without significant changes occurring since the previous custody order. The record, however, reveals that the circuit court conducted an evidentiary hearing in March 2021 at which it heard testimony from plaintiff, defendant, and another witness, and received evidence pertaining to the legal custody issue. Analysis of the evidence supports the court's decision. The evidence does not clearly preponderate in the opposite direction of the court's finding that, following entry of its December 2020 order regarding the child's school, the parties' communication and cooperation regarding the child's school and

medical issues significantly deteriorated sufficient to warrant revisiting the child's legal custody issue.

When deciding whether joint custody is within the best interests of the child, the court must consider the best-interest factors and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). Decision-making authority about the important decisions affecting the child is an aspect of custody. MCL 722.26a(7)(b). "[L]egal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013).

To minimize unwarranted and disruptive changes in children's custody, a circuit court may only modify children's custody if the moving party first establishes a proper cause or a change of circumstances. *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009). The existence of proper cause or a change of circumstances is a threshold consideration that the trial court must resolve before revisiting a custody order. *Id*. The purpose of this framework is to "erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks and citation omitted). The movant "has the burden of proving by a preponderance of the evidence that either proper cause or a change of circumstances exists . . . ." *Id*.

A proper cause to modify a child's custody exists if there are "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. The best-interest factors must guide the court's determination whether proper cause exists warranting revisiting custody orders. *Id*. at 512. A change of circumstances warrants modifying a child's custodial environment if, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513.

In this case, the circuit court found a number of material changes that had or could have a significant effect on the child's well-being. The court's greatest concern related to the child's school issues. The court found that plaintiff admitted that after the court's school decision she contacted the school without consulting defendant and withdrew the child from standardized testing that had already started. Plaintiff also admitted that she sent a letter to the school without consulting defendant in which she chastised the school for having the child participate in activities citing religious grounds. Plaintiff, however, admitted that the school activities actually were not religious and did not diminish other religions. She admitted having similar celebrations in her own home, not to the exclusion of other customs or religions. The circuit court also found that evidence established that plaintiff failed to complete school work with the child because she did not make the effort to get the information from the school. The record evidence supports the court's determination that plaintiff's unilateral actions impacted the child's schooling and interfered with the school's ability to assess his progress.

The evidence does not clearly preponderate against the court's finding that issues regarding the child's school had materially changed. The previous issues regarding the child's schooling

included that plaintiff failed to help the child complete assignments, plaintiff's issues with obtaining accommodations to pick up class materials, and plaintiff being asked to stop attending the child's classes because she caused distractions. At that time, plaintiff had not interfered with the child's standardized testing, but expressed concern regarding the child's test scores. Additionally, the child's baseline assessment showed deficiencies with letter recognition, number recognition, and sounds. The court found that, if the child could not be tested and assessed, the school would be prevented from determining whether he improved or might need student services. Plaintiff admitted during her testimony that, after the first week of January 2021, she unilaterally contacted the child's school and informed it that she did not authorize the child to take part in standardized testing. She testified that she did so because she believed the school's method of standardized testing lacked integrity. Plaintiff admitted that she did not contact or communicate with defendant before directing the school to exclude the child from the testing. Defendant testified that he learned after the fact about plaintiff's directive to the school that the child be excluded from standardized testing. He did not agree with that decision. The evidence presented at the March 2021 hearing established that the parties were unable to cooperate and agree about important decisions such as standardized testing and other aspects of the child's education. The child's school record relates to the best-interest factors. See MCL 722.23(h).

The record also indicates that, before 2021, plaintiff never expressed any concern about school activities on religious grounds. During the March 2021 hearing, plaintiff admitted that she sent the school a letter that expressed concern about the school discussing things about Christmas. When asked for an explanation, she admitted that the school activities were not of a religious nature, that "there's nothing wrong with talking about Christmas," and that she put up seasonal decorations in her own home. The record indicates that, before communicating with the school in this regard, she had not discussed the issue with defendant nor consulted him. She also did not communicate with defendant before withdrawing the child from school for two days. The court's finding that the issues related to the child's education had the potential to substantially impact the child's life, was not against the great weight of the evidence.

At the March 2021 hearing, evidence also established that plaintiff failed to inform defendant about the child's medical issues and appointments. Plaintiff attempted to excuse her failure to inform defendant about an appointment on the ground that she had been angry. Defendant did not receive information about a significant eye appointment during which the child's eyes were dilated until long after the appointment. The court's existing order required that plaintiff promptly inform defendant of all such medical issues. Evidence established that, on February 20, 2021, plaintiff refilled the child's prescription medication and the pharmacy provided the child a 90-day supply but plaintiff gave defendant a different bottle with a 30-day supply, retaining the rest at her home despite the fact that the child would be in defendant's physical custody. The label on the medication plaintiff gave defendant made it unclear whether the medication had expired. Plaintiff never spoke with defendant about it. Defendant testified that the breakdown in communication between the parties became a safety issue for the child.[5]

---

[5] Plaintiff testified that she had refilled the child's medication. When asked whether she had given defendant all of the child's medications during his parenting time, plaintiff testified that she did

The circuit court properly found that a preponderance of the evidence established that issues regarding the well-being of the child necessitated revisiting the child's custody. The evidence did not clearly preponderate against the court's finding that the issue about communication regarding the child's education, medical concerns, and prescription medication had the potential to significantly impact the child.

The evidence established a proper cause to revisit custody because it confirmed issues that directly affected the child's well-being related to MCL 722.23(b). Under *Vodvarka*, the court is only required to find a proper cause *or* a change of circumstances. See *Vodvarka*, 259 Mich App at 510. A change of circumstances requires examining the circumstances that occur between one custody order and another. *Id*. at 514. However, "[t]he same is not necessarily true for proving proper cause, though in most cases it will hold true." *Id*. at 515. The issue of proper cause is more concerned with the significance of the events. *Id*.

At the March 2021 legal custody hearing, both parties testified about scheduled, referred, and missed medical appointments. Medical appointment issues were discussed at the previous custody hearing, including plaintiff's belief that the child required additional appointments. Defendant testified that plaintiff repeatedly made unnecessary appointments with medical providers; and as the child got older, he observed the more it affected the child's development and did not serve the child's best interests.

Although there may not have been clear and convincing evidence to support changing the child's legal custody in December 2020, a preponderance of the evidence established that circumstances changed significantly in January and February 2021 warranting revisiting the legal custody order. The evidence did not clearly preponderate against the court's finding that issues arose regarding plaintiff's disruptions in the child's schooling, plaintiff's handling of the child's medications, and plaintiff's making medical appointments without including defendant in the decision, all of which had the potential to significantly impact the child's well-being.

Plaintiff argues for the first time on appeal that her lack of counsel affected the trial court's legal custody decision and resulted in the court being biased against her. We disagree.

A party abandons its assertions when it fails to include the issue in his or her statement of questions presented and fails to provide any authority to support its assertions. *Caldwell*, 240 Mich App at 132. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Id*. at 132-133. Plaintiff's statement of questions presented does not refer to a lack of counsel or judicial bias. Plaintiff does not include any discussion of legal authority or expand on this argument beyond stating that the trial court could be easily swayed by defendant's arguments and that the disparity was clearly evident in the outcome. Plaintiff,

---

not think of that. When asked why plaintiff did not give defendant the actual bottle of prescription medication, plaintiff testified that she did not know. She agreed that a bottle was old and that she was not sure what happened regarding the number of tablets. She testified that the prescription issue did not really matter and expressed the opinion that it was not a big deal.

however, abandoned these issues by failing to state them as issues presented and by merely announcing these positions without support.

Regardless, the record reflects that plaintiff had the opportunity to obtain counsel before the scheduled March 2021 evidentiary hearing. The record indicates that, before starting the hearing, the circuit court appropriately inquired and determined that plaintiff chose to proceed without the assistance of retained counsel. Plaintiff did not object to proceeding.

Further, the record reflects that the circuit court appropriately accommodated plaintiff to enable her to present her case, interrogate witnesses, and argue her position. The record indicates that plaintiff knowingly and voluntarily waived the issue of legal representation and she abandoned the claim of judicial bias. The mere fact that a court has ruled against a litigant does not establish judicial bias. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). The record in this case contains no indication that plaintiff's self-represented status affected the integrity of the proceedings or influenced the court's decisions. Accordingly, we find no merit to plaintiff's contentions in this regard.

## 2. BEST INTERESTS

Plaintiff argues that the trial court failed to examine the role that defendant's unilateral decision to enroll the child in defendant's district had on the parties' coparenting relationship, and that the trial court failed to give plaintiff the benefit of the doubt when she merely wanted the child to attend a better school. Plaintiff also argues that this Court should be skeptical of defendant's motives to enroll the child in school in the first place. These arguments do not address the basis of the trial court's legal custody decision or establish that its findings were against the great weight of the evidence. This Court need not consider arguments that do not address the basis of the trial court's decision. *Derderian*, 263 Mich App at 381.

In this case, the record indicates that, after finding that a preponderance of the evidence established proper cause and a change of circumstances warranting revisiting the legal custody of the child, the circuit court analyzed the applicable best-interest factors to determine whether a change in legal custody served the child's best interests. The record reflects that the court considered defendant's unilateral school enrollment decision, plaintiff's school preference, and the parties' willingness to facilitate relationships with each other and be involved in the child's education. The court based its legal custody decision on plaintiff's undisputed unilateral conduct of withdrawing the child from standardized testing, failure to properly assist the child's completion of school work, unannounced removal of the child from school for two days, and failure to involve defendant in importation medical decisions.

Plaintiff argues that defendant was less willing than plaintiff to facilitate a close parent-child relationship with the child by refusing to consider how defendant's unilateral school decision affected plaintiff's emotional state. As previously discussed, the circuit court took that into consideration when making its school decision before the motion to change the child's legal custody. Plaintiff's argument does not address the court's grounds for its legal custody decision. She does not explain how the court's findings were against the great weight of the evidence or should have been supplemented with evidence that was available at the legal custody hearing. We conclude that these arguments do not address the basis of the trial court's decision.

-14-

Regardless, the evidence did not clearly preponderate against the trial court's findings following the parties' legal custody hearing. When considering a child's best interests, the trial court must consider "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). Again, the best-interest factors focus on the child, MCL 722.25(1), not on the parents.

In this case, the circuit court found that the parents' ability to facilitate a relationship with the other parent slightly favored defendant. The court was "concerned about the impact the Plaintiff's emotional fallout has on the child and his ability—his relationship with his dad." Evidence established that plaintiff failed to timely arrive to exchange the child, and on at least one occasion plaintiff followed defendant out of a store after exchanging the child saying that the truth would set the child free. Defendant testified that following time with plaintiff, the child worried that defendant would keep him from his mother. Defendant testified that, during a parenting exchange, the child asked why defendant would not let him see his mother anymore. Defendant also testified that the child had called him a liar for no apparent reason. Defendant explained that he informed the child that he understood that the child loved plaintiff and that defendant did not want to keep him from plaintiff. Plaintiff did not offer contrary testimony about the parenting exchanges. The evidence did not clearly preponderate against the trial court's finding that defendant was slightly favored regarding this factor because of his ability and willingness to facilitate a relationship with plaintiff.

The record reflects that the circuit court appropriately considered the applicable best-interest factors. Evidence established that plaintiff's undisputed conduct indicated that she would not work together, communicate, or cooperate with defendant to make decisions in the child's best interests. The court found that the evidence established that plaintiff acted unilaterally regarding the child's schooling, his medications, and medical appointments, all of which impacted him significantly. The court found that plaintiff's conduct called into question her ability to make sound judgments and indicated that she made decisions because of her emotional state and not in the child's best interests. Plaintiff's testimony focused on herself and not on the child. The court found that the evidence established that defendant had communicated with plaintiff regarding school issues and medical information and records. His conduct indicated that he focused on the child and not himself.

The circuit court also considered the ability of the parties to provide the child food, clothing, and medical care. The court found that the evidence established that they both could provide adequately for the child's material needs, but the evidence raised concerns about medical care. Specifically, the court found that plaintiff failed to share with defendant medical information including appointments, contrary to the court's previous order that all referrals for medical care were to be made by the child's pediatrician. The court noted that it had entered that order in 2019 because plaintiff had involved so many doctors that it provided the child no cohesive medical care. The court found that plaintiff failed to follow the order which deprived defendant of the information until he found out via his insurance. The court also found that plaintiff admitted that she could have provided defendant the medical appointment information but simply did not do it. The court, therefore, found that factor (c) favored defendant. The record supports the court's decision in this regard.

The record indicates that the circuit court determined that factors (d) and (e) favored neither party because both parents provided the child a satisfactory stable and safe environment, and permanency of a family unit. The court found that evidence did not indicate any moral fitness issue or mental or physical health issue that impacted either party's ability to parent the child, and therefore, factors (f) and (g) also favored neither party. Respecting factor (h), the circuit court found that the same facts pertinent to factor (b) applied and that the factor favored defendant. The court did not consider factor (i) relevant to its decision because it reasoned that the child's young age would not enable him to express a preference about what parent had the best ability to make decisions about his well-being. The court also did not consider factor (k) relevant because no evidence established domestic violence directed against or witnessed by the child. The record supports the court's decisions regarding these factors.

Respecting factor (j) concerning the parties' willingness and ability to encourage a close and continuing parent-child relationship, the circuit court found that evidence indicated that plaintiff's "emotional fallout" impacted the child, noting the evidence of conduct during exchanges that caused the child to question defendant regarding keeping him from having contact with plaintiff. The court noted at least one positive aspect of the situation in that the evidence indicated that the child willingly spoke openly with defendant about his concerns. The court found factor (j) favored defendant slightly. The record supports the court's decision in this regard.

The circuit court also considered factor (*l*) which concerns other factors relevant to the child custody dispute. The court expressed concern that plaintiff deliberately failed to follow the court's orders particularly respecting issues of her unilateral decisions regarding the child's schooling. The court found that plaintiff admitted almost all of the facts pertaining to the reasons for reviewing legal custody. The record supports the court's findings.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Christopher M. Murray