*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IGCFCO III, LLC,

        Plaintiff-Appellee,

v

ONE WAY LOANS, LLC, doing business as
POWERLEND,

        Defendant,

and

P&G HOLDINGS, LLC, WATERMARK
BANQUET AND CONFERENCE CENTER, LLC,
THE COFFEE FACTORY, LLC, and MOSES
GROSS,

        Defendants-Appellants.

FOR PUBLICATION
August 8, 2024

No. 366535
Muskegon Circuit Court
LC No. 2021-001755-CB

Before: RICK, P.J., and JANSEN and LETICA, JJ.

LETICA, J. (*concurring*).

I concur in the result.

On April 14, 2023, plaintiff, IGCFCO III, LLC, moved for entry of a final deficiency judgment. In that motion, plaintiff noted that a stipulated consent judgment dated March 9, 2022, was entered in its favor and against defendants, P&G Holdings, LLC, Watermark Banquet and Conference Center, LLC, the Coffee Factory, LLC, and Moses Gross. This motion reflected that defendants were responsible for a judgment of $9,650,000 less any amounts paid according to the parties' underlying settlement agreement, interest calculated at 13% but capped at $500,000, and possession of various property. Plaintiff asserted that it could not collect the judgment amount until it sold the real property and the judgment collateral and it was determined that the net sale proceeds did not fully satisfy the judgment amount. It was also contended that the consent judgment gave plaintiff the right to sell the real property and judgment collateral "in any

-1-

commercially reasonable manner and means that [plaintiff] (or its designee) decides to use."[1] Plaintiff stated that it had sold the real property and judgment collateral on December 22, 2022, in a commercially reasonable manner, in an arm's-length transaction, and with an unrelated third-party. Specifically, the net proceeds of the sale of the assets, personal property, and real property was $4,892,187.10. After including the interest cap of $500,000 and $30,000 award arising from a show cause order for failing to maintain security deposits, plaintiff calculated the deficiency judgment in the amount of $5,287.812.90. To support the judgment amount, plaintiff submitted the affidavit of Jeff Padden, plaintiff's general counsel, which delineated the buyer, the purchase price of the individual assets, the net proceeds after costs, the interest calculation, and the outstanding court-ordered sum arising from the security deposits.

On May 23, 2023, defendants filed a response in opposition to plaintiff's motion. In this response, defendants acknowledged that plaintiff relied on the consent judgment and its claim of compliance with the judgment terms, but asserted that evidence of fulfillment was lacking.[2] Despite the acknowledgment that the consent judgment was at issue, defendants alleged that Michigan's Uniform Commercial Code (UCC) governed interests in "personal property" and that disposition of collateral must be in a commercially reasonable form, including the method, manner, time, place, and terms, citing MCL 440.9610(2). Defendants did not assert that Michigan's UCC also governed the sale of real property.[3] Defendants also alleged that the deficiency judgment should be reduced by rents received from various property. With the response, defendants filed an unsigned affidavit from defendant Gross essentially opining that a higher sale amount could have been obtained, citing past valuations and an offer to purchase a portion of the property for $5,000,000.

On May 25, 2023, plaintiff filed a reply brief, asserting that it engaged in commercially reasonable efforts to maximize the sale of the property in accordance with the broad powers set forth in the consent judgment. It submitted the affidavit of James Barrons, senior counsel for a private equity fund of which plaintiff was a subsidiary. This affidavit delineated the contacts with commercial brokers and the selection of Coldwell Banker Richards Ellis, Inc. (CBRE), because of its status in the commercial industry, its Michigan presence, and its expertise and experience. It was also noted that CBRE previously worked with defendant Gross when he sought CBRE's assistance in marketing and selling the property. The Barrons affidavit delineated a prior listing price, the decision to lower the asking price, the marketing campaign efforts, and the ultimate

---

[1] The consent judgment also provided that the deeds in escrow were to be delivered to plaintiff and defendants were to vacate the real property and transfer the judgment collateral within 10 days of receipt of notice of the delivery of the deeds.

[2] Defendants' brief stated, "But, in doing so, [p]laintiff failed to provide any evidence to show that it complied with its obligations under the parties' [c]onsent [j]udgment to use 'commercially reasonable' means to sell the Watermark [p]roperties and related [j]udgment [c]ollateral."

[3] In its response, defendants sole argument was that "the sale of real property is commercially reasonable when it is 'conduct in good faith and in accordance with commonly accepted commercial practice.' Commercially Reasonable, *Black's Law Dictionary* (11th ed. 2019)."

purchase price. And, it concluded that rental payments did not lower the deficiency judgment because the payments were offset by costs. Plaintiff contended that defendants were not entitled to a reduction in the deficiency judgment for rental payments.

Following oral argument on the motion, the trial court determined that the sale occurred in a commercially reasonable manner, citing the Barrons affidavit. Further, the trial court noted that the affidavit submitted by defendant Gross was not signed. The trial court found that defendants were not entitled to an offset for rental payments in light of defendants' "insufficient evidence" and that offsets were not included in the contract terms. Finally, the trial court noted that it was confined to the terms of the consent judgment. After the trial court ruled, defendants advised that they had filed a signed affidavit by defendant Gross. The trial court determined that a signed copy of the affidavit did not alter its ruling.[4]

On appeal, defendants contend that the UCC requires the disposition of collateral occur in a commercially reasonable manner to protect debtor rights, and this requirement cannot be waived despite the consent judgment. But, the trial court's ruling was premised on the language of the consent judgment and the failure to present admissible evidence to controvert the Barrons affidavit. Defendants fail to challenge or dispute the basis of the trial court's ruling, and therefore, this Court need not even consider granting the relief requested. *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020); *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Moreover, defendants simply conclude that the UCC applies and fail to cite authority in support of this conclusion, resulting in the abandonment of the issue. *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citation omitted).

The general rule is that Article 9 of the UCC does not apply to the creation or transfer of an interest in land. *In re Moukalled Estate*, 269 Mich App 708, 715-716; 714 NW2d 400 (2006).[5] I note that there are exceptions to the general rule, see MCL 440.9109(4)(k)(iv); MCL 440.9604(1)(b), but defendants failed to assert that the exceptions controlled, thereby abandoning any application. *Seifeddine*, 327 Mich App at 519-520. Furthermore, "[t]he intent of the parties to an agreement concerning an interest in property determines whether the agreement transfers ownership of the property or whether the parties merely intended the property to secure performance of an obligation." *Prime Financial Servs, LLC v Vinton*, 279 Mich App 245, 261; 761 694 (2008) (citations omitted). Defendants did not dispute plaintiff's contention that the consent judgment applied and its entry caused the title to the property to vest in plaintiff.

---

[4] Before the hearing was conducted over Zoom, the only copy of the defendant Gross affidavit submitted to the lower court was unsigned. After the trial court ruled orally from the bench, a written order reflecting the trial court's decision was signed and entered. Sometime later that day, a signed copy of the defendant Gross affidavit was filed in the lower court record.

[5] The *Moukalled* Court addressed MCL 440.9104(j) a prior version of article 9. This provision can now be found in MCL 440.9109(4)(k) (This article does not apply to . . . [t]he creation or transfer of an interest in or lien on real property[.]").

Additionally, a trial court's decision that an evidentiary hearing is unwarranted is reviewed for an abuse of discretion. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 359; 941 NW2d 685 (2019) (citation omitted). And when a sufficient record is created to review an issue, an evidentiary hearing is unnecessary. See *id*. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Bradley v Progressive Marathon Ins Co*, 345 Mich App 126, 131; 3 NW3d 559 (2022) (quotation marks and citation omitted). Regardless of whether commercial reasonableness through the consent judgment or the UCC applied,[6] the trial court did not abuse its discretion in denying the request for an evidentiary hearing. The trial court correctly determined that defendants presented insufficient evidence to warrant an evidentiary hearing. The affidavit submitted by defendant Gross protested the sale in light of prior valuations. Although defendant Gross stated that there was an offer for the Washington Avenue property, he did not delineate specific details.[7] Additionally, the newspaper article containing hearsay statements regarding tax motivations did not establish that an evidentiary hearing was warranted. And, defendants failed to include any provision for rent offsets in the consent judgment. The fact that plaintiff filed the more detailed affidavit by Barrons with its reply brief did not demonstrate an abuse of discretion. At the hearing on motion, defendants claimed that the Barrons affidavit was "excessive and flawed" with regard to its determination of costs. But, defendants failed to make any offer of proof or expert testimony regarding the appropriate percentage of costs generally applicable to the type of business at issue. For these additional reasons, I agree that the trial court's decision should be affirmed.


/s/ Anica Letica

---

[6] It is apparent that plaintiff determined that the consent judgment controlled particularly when this judgment addressed the deeds, property, and collateral transfer. And, the consent judgment failed to contain any offset to defendants for rental payments. I agree with plaintiff.

[7] The affidavit stated that an unrelated third-party approached defendant Gross "with an offer to purchase the 930 Washington Avenue property and limits [sic] parts of the other parcels for $5 million." Because of the failure to identify the portions of other parcels, it is unclear of what the collective valuation of the property would be and if it comported with defendants' estimate that the property should be valued between $9,000,000 and $12,000,000.